## FRASER v. JAMES.

1. NEW COUNTIES—ELECTIONS—LEGISLATURE—RES JUDICATA.—The action of the tribunal (county commissioners of election) having power to declare the result of an election on formation of a new county is binding on the legislature as well as all others.

2. ID.—TOWNSHIPS—SCHOOL DISTRICTS—CONSTITUTION—WORDS AND PHRASES.—The words, "each section of an old county," in art. VII., sec. 1, of Constitution, do not refer to townships, school districts, &c., but to that portion of the territory of an old county which it is proposed to embrace within the new.

3. ID.—LEGISLATURE—COLLATERAL ATTACK.—No tribunal being invested with power to ascertain if the conditions precedent to the formation of a new county have been complied with, the legislature must ascertain for itself, and its determination of the existence of such facts cannot be assailed in any Court by evidence _aliunde_.

Petition in the original jurisdiction of this Court by Wm. P. Fraser *et al.* against W. A. James *et al.,* as commissioners for Lee County, as follows:

"The plaintiffs above named, who bring this action as well for themselves as for all others, citizens of the territory embraced within the boundaries of the so-called county of Lee as may come in and contribute to the expenses of this action, petition and say:

"1. That a petition signed by sundry citizens of Sumter, Kershaw and Darlington counties, was filed in September last with the governor of South Carolina, praying the creation of a new county, setting forth the metes and boundaries of the proposed new county, and that the acreage, number of inhabitants and value of property as assessed for taxation, in both new and old counties, and distance of new county line from the court house of the said three old counties, were such as would permit the creation of such new county under the requirements and restrictions of the Constitution of South Carolina of 1895.

"2. That petitioners are advised that no such petition would authorize the creation of a new county nor an election therefor unless the petition therefor was signed by one-third of the qualified electors of each section of the proposed new county, and that 'each section,' as used in the Constitution and statute, means each township, school district or other then existing territorial division; and petitioners have been informed and believe that said petition was not signed by one-third of each township, school district or other territorial division then existing within the limits of the said proposed new county.

"3. On information and belief, that no survey nor lawful setting forth of the actual boundaries of the new county was made prior to the filing of said petition and to the election ordered and held thereunder.

"4. That no portion of Rafting Creek Township was included in the boundaries as described in said petition and in

the proclamation of the governor ordering an election, as prayed for in said petition.

"5. On information and belief, that the area, population and assessed valuation of property in the proposed new county and in the said three old counties, were not accurately ascertained, but were estimated by mere conjecture.

"6. That the court house building of Sumter County is less than eight miles from the boundary line of said proposed new county.

"7. That pursuant to the prayer of said petition, the governor of the State ordered an election to be held within the limits of the said proposed new county on the 22d day of October, 1901, and said election was then and there held, but because there was no survey and designation of the boundary lines prior to said election, it was impossible for the managers always to tell with accuracy which voters in the vicinity of said boundaries were within and which without the limits of the proposed new county.

"8. That the managers and county election commissioners declared as a result of said election that two-thirds of the ballots cast separately in each of the counties of Kershaw, Darlington and Sumter had voted 'yes' on the creation of the county, and in favor of 'Lee' as its name and 'Bishopville' as its county seat.

"9. That after said election had been held and before the passage of the act of the legislature hereinafter mentioned, the friends of the said Lee County caused a survey of the new county lines to be made, and in such survey have changed the lines named in the said petition to the governor.

"10. That the result of said last mentioned election was certified in legal form by the commissioners of election for said three old counties to the secretary of State, and by him was submitted to the General Assembly at its next session—all of which proceedings were conformable to law.

"11. That the General Assembly, at its said session, passed an act, which was entitled 'An act to establish Lee County,' and said act was duly approved by the governor on the 25th

day of February, 1902. The said act of assembly purports
to create and establish the said county of Lee, designating
the same boundaries as are set forth in said petition, provid-
ing for the election of county officers and others at the gene-
ral election in November next, locating it in the Third Cir-
cuit and in the Seventh Congressional District, and making
other provisions for the full operation of a county govern-
ment. But said act provides for the inclusion of a portion of
Rafting Creek Township, notwithstanding no portion of said
township was included in the boundaries named in said peti-
tion.

"12. The said act also directs the respondents to this peti-
tion, as commissioners of Lee County, 'to have the bounda-
ries of said new county' marked as now surveyed,' whereas,
the boundaries as then surveyed were different from the
boundaries as named in the petition and in section 1 of said
act, in the following particulars: (1) The corner 'in Brad-
ley's field near Kershaw County line,' as called for by the
petition and the act, has been disregarded, and the line run a
mile or more beyond into Rafting Creek Township. (2)
The line of 'Scape O'er Swamp,' as called for by the petition
and act, has been changed, and moved a half mile away from
said swamp and further from the court house of Sumter
County.

"13. That the said act also contains the following provi-
sions; 'Sec. 2. That W. A. James, J. E. McCutchen, W. R.
Shaw, Edwin Wilson, W. M. Kelly, A. E. Skinner, A. M.
Lee, A. Johnson and John F. Matthews, are hereby ap-
pointed commissioners of said county of Lee, and they and
their successors in office are hereby authorized to have the
boundaries of said new county marked as now surveyed, and
to provide a court house and jail, by the erection of suitable
buildings at the county seat, and to receive and accept in the
name and for the new county of Lee, any bonds, money, land
or other gifts donated or hereafter given to have erected the
said public buildings: *Provided,* That when the county
supervisor for said county is elected and qualified, and

6—65

county commissioners are appointed and qualified, or such county officers as shall be then clothed by law with the authority now exercised by said supervisors and commissioners or a board of commissioners, the above named commissioners shall then turn over to the county board of commissioners or such officers as are then exercising their authority, all the public buildings, if then completed, and also all bonds, obligations, lands or money in thir hands and belonging to the said county of Lee, and then their powers and duties shall cease, and the county board of commissioners or such other officers as shall succeed to all the rights and powers of said commissioners.'

"14. That upon the establishment of the said Lee County, county officers for such new county, including clerk of court, sheriff, probate judge, treasurer, auditor, supervisor, commissioners of election and others, will be required, additional buildings, such as court house, jail and poor house, must be erected; terms of Court must be held, and jurors therefor summoned and empanelled; books for registration transcribed, and an adjustment of indebtedness between the new county and the old counties made—all or some of which will involve an expenditure of money over and above what would be required if such new county be not established, and the money so expended must be raised by taxation of taxable property within the limits of said new county.

"15. That the commissioners appointed by the said act of assembly of 1902 are authorized and empowered to do acts and make contracts which will involve the expenditure of money, which, under the said act, would be a charge upon all of the taxable property of said Lee County, to wit: to have the boundaries of said new county marked as now surveyed, and to erect suitable buildings for court house and jail at the county seat.

"16. That your petitioners are citizens, electors, freeholders and taxpayers of the territory embraced within the said Lee County, opposed to the creation of said county; and they submit, as a matter of law, that as such opponents, they

should make known their opposition, and take action to prevent the formation of such new county before the same has been fully established. And they further submit that the said act of the General Assembly is null and void, and the creation and establishment of Lee County unauthorized and unconstitutional, for the reasons that the said Lee County did not certainly receive the favorable vote of two-thirds of the qualified electors voting in each section of said proposed new county; did not certainly have the necessary population and assessed value of property, nor leave the necessary population and assessed value of property in the three old counties from which it was carved; has not the boundaries in the act that were designated in the petition and should have controlled the election; and has cut the county of Sumter 'within eight miles of its court house building.'

"Wherefore, your petitioners pray that the defendants, as commissioners of Lee County, may be enjoined from doing or performaing any act or duty imposed upon them by the terms of the said act of assembly of 1902. And your petitioners, as in duty bound, will ever pray, and so forth."

(Sworn to).

*Mr. R. W. Shand,* for petitioners.

*Messrs. J. H. Hudson* and *Leroy F. Youmans,* contra.

December 15, 1902. The opinion of the Court was delivered by

MR. JUSTICE JONES. By this proceeding in the original jurisdiction of this Court, petitioners seek to enjoin the respondents, as commissioners of Lee County, from performing any duty imposed upon them by the act of the General Assembly to establish Lee County, approved 25th February, 1902, 23 Stat., 1194, upon the grounds set forth in the petition herewith reported, which assails the constitutionality of said act, "for the reasons that the said Lee County did not certainly receive the favorable vote of two-thirds of the qual-

ified electors in each section of said proposed new county; did not certainly have the necessary population and assessed value of property, nor leave the necessary population and assessed value of property in the three old counties from which it was carved; has not the boundaries in the act that were designated in the petition and should have controlled the election; and has cut the county of Sumter within eight miles of its court house building." Respondents made return denying the material allegations of the petition, and petitioners gave notice of a motion for a reference to take testimony upon the issues of fact raised. Upon the call of the case, however, respondents made a motion to dismiss the petition, being in effect a demurrer thereto, upon the several grounds set forth in their demurrer or motion.

After carefully considering the matter, the Court is of opinion that the petition should be dismissed upon the ground that it fails to state a cause of action or facts warranting the injunction prayed. The case now presented is very different from the case as presented in *Segars* v. *Parrott*, 54 S. C., 1, wherein the former act creating Lee County, 22 Stat., 908, was declared unconstitutional, and the commissioners thereunder were enjoined from performing any duties imposed upon them by said former act. In that case the petition alleged, among other things, that the result of election for the proposed county of Lee in that portion of Darlington County sought to be embraced within the area of said new county of Lee, was as returned by the managers of election and as declared by the commissioners of election unfavorable to the creation of the said new county, in that, as so reported and declared, it failed to obtain two-thirds of the qualified electors in the Darlington section in favor of the new county. In this case it is alleged, "That the managers and county election commissioners declared as a result of said election that two-thirds of the ballots cast separately in each of the counties of Kershaw, Darlington and Sumter had voted 'Yes' on the creation of the county and in favor of 'Lee' as its name and

'Bishopville' as its county seat." "That the result of said last mentioned election was certified in legal form by the commissioners of election for said three old counties to the secretary of State and by him was submitted to the General Assembly at its next session. All of which proceedings were conformable to law." In the case of *Segars* v. *Parrott,* the former act creating Lee County was declared unconstitutional because it appeared by the result of the election as certified by the commissioners of election to the General Assembly that two-thirds of those voting in the Darlington section were not in favor of the proposed new county, the majority of the Court holding the view that the result of the election as declared and certified by the commissioners of election to the General Assembly, in the absence of any judicial action setting it aside, was final and conclusive as to such result, and could not be disregarded by the legislature. The Constitution required an election on the proposed new county, leaving it to the legislature to provide the mode of ascertaining and declaring the result, which was done by the act of March 9, 1896—22 Stat., 64—making it the duty of the commissioners of election to canvass the returns of the managers of election and certify the result to the secretary of State, to be by him transmitted in tabulated statements to the General Assembly. The result of the election having been determined pursuant to the Constitution and act of the General Assembly by the designated tribunal having power so to do, was conclusive of the fact and binding upon the legislature as well as all others. It follows in this case, in so far as the allegations relate to the election for the proposed new county of Lee, that *Segars* v. *Parrott* is authority for dismissal of the petition.

In reference to the allegation in the second paragraph of the petition, that the petition to the governor for the creation of the new county was not signed by one-third of the qualified electors of each township, school district or other territorial division then existing, within the limits of said proposed new county, we may say that such alle-

gation states no ground for injunction, for the reason, among others, that the words "each section," in art. VII., sec. 1, of the Constitution, providing that the "General Assembly may establish new counties in the following manner: Whenever one-third of the qualified electors within the area of *each section* of an old county proposed to be cut off to form a new county shall petition the governor, &c.," does not refer to such divisions of a county as township, school district and the like, but means that portion of the territory of an old county which it is proposed to embrace within the new county, without regard to township or school district lines.

We need not notice the allegations of the petition in detail, as it will be sufficient for the purpose of stating our view to notice the allegation "that the court house building of Sumter County is less than eight miles from the boundary line of said proposed new county," as this is the allegation specially relied upon to sustain the petition. Sec. 5, art. VII., of the Constitution, provides: "In the formation of new counties, no old county shall be cut within eight miles of its court house building." And in section 2 of said article it is provided that "no county shall be formed without complying with all the conditions imposed in this article"—said article imposing other conditions in reference to area, population and assessed taxable property, &c. With respect to the ascertainment of the existence of these conditions, no tribunal has been specially invested with power to determine the facts preliminary to legislative action, as was done in reference to the election for the proposed new county. The Constitution imposed upon the legislature the duty of creating a new county when the specified conditions existed. No other tribunal having power to determine the existence of the condition under consideration, it was necessarily incumbent upon the legislature to determine for itself, whether such conditions existed as preliminary to the performance of the duty imposed upon the legislature by the Constitution in reference to the formation of new counties. The act to

establish Lee County, approved 25th February, 1902, recites
that all conditions required by the Constitution and laws of
the State for the formation of new counties have been com-
plied with.    That determination of the existence of such
facts or conditions cannot be assailed in any Court by evi-
dence *aliunde* impeaching the correctness of the same.    The
legislature has the power to determine such facts, and no
fraud or deceit are imputable to a legislative body.    The
act to establish Lee County, adopted February 25th, 1902,
is not unconstitutional by reason of anything alleged in the
petition.

It is, therefore, ordered and adjudged, that the petition
herein be dismissed, and that the restraining order heretofore
made in these proceedings be and is hereby revoked.