6722

PARLER v. FOGLE.

1. NEW COUNTIES.—The statutes or Constitution do not require lines of proposed new counties to conform to township or precinct lines in old counties. Whether the boundaries of a proposed new county are stated with sufficient definiteness in the petition is for the Governor, and it is discretionary with him to permit amendments to the petition to make the boundaries more definite or to enlarge them.

2. IBID.—ELECTIONS—INJUNCTIONS.—The power to enjoin an election, if it exists, should be exercised with the greatest caution and only where there is no other adequate legal remedy or it is made clear irremediable wrong will result. This Court, on petition to enjoin an election for a new county, will not consider whether the statute under which the election is proposed to be held is unconstitutional because it provides for an election without making for those electors living within the proposed boundaries whose voting precincts are without, any provision for casting their ballots; because it may be *damnum absque injuria,* and such voters have an adequate remedy at law by writ of *certiorari* to the State Board of Canvassers after election.

3. INJUNCTION—ELECTIONS.—It is no ground for the Court to enjoin an election which the Constitution authorizes the Governor to order that neither the election officers nor the people have taken the proper steps to have electors qualified to cast their ballots at the election.

Petition in the original jurisdiction of this Court by A. R. Parler, A. C. Smith, E. F. Frick and Geo. W. Smith against W. Brooks Fogle *et al,* as commisisoners of election for Orangeburg County, to enjoin an election ordered by the Governor on the formation of Calhoun County.

*Messrs. B. H. Moss, Herbert & Wolfe,* for petitioners.

*Messrs. Bellinger & Welch,* contra.

December 14, 1907.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   On October 28, 1907, his Excellency, Governor Ansel, ordered an election to be held on Tuesday, December 17, 1907, upon the question of creating

a new county out of portions of Orangeburg and Lexington counties. The plaintiffs, alleging themselves to be qualified electors residing within the area of the proposed new county, have filed their complaint in this Court, praying that the election be enjoined on several grounds which will be separately considered. The answer does not deny any material allegations of fact, and it was agreed at the argument that it was to be treated as a demurrer to the complaint. The question, therefore, is whether, taking all the statements of fact made in the complaint as true, the Court should enjoin the commissioners and managers from holding the election.

The petition to the Governor and all the proceedings thereunder are alleged to be void "because the boundaries and lines of the proposed new county are not stated and described with sufficient definiteness and clearness so as to be understood and followed by the surveyors, and said boundaries and lines are not surveyed and 'plainly marked,' as required by statute, with sufficient definiteness and clearness, so as to enable those interested to know certainly where the lines of the proposed new county are located, and who, among those residing near the proposed new lines, are within, and who are without the proposed new county; and, also, because the said proposed lines have been run in utter disregard of the lines of the townships and polling precincts established by law in the said County of Orangeburg, and in many cases the townships and polling precincts are cut up and divided so as to include the greater part of the township or polling precinct within the proposed new county, and exclude the polling or voting place; and such is the case with Orange, Goodbye and Poplar Townships, and other townships in said County of Orangeburg."

The complainants further allege, the Governor, without warrant of law, allowed the petition presented to him to be amended so as to enlarge the area of the proposed new county. There is nothing in the Constitution or statutes of the State requiring the lines of new counties to conform to township or precinct boundaries.

The question whether the boundaries of the proposed new county were laid down in the petition with sufficient definiteness was for the Governor to determine. *Lamar* v. *Croft,* 73 S. C., 407, 53 S. E., 540; *Reese* v. *Ansel, Governor, ante,* 331. So, also, it was within the discretion of the Governor to refuse or allow the amendment to the petition before him setting forth with more definiteness the boundaries. The Constitution proceeded on the theory that the Governor, with respect to all proceedings before him, would see that its provisions are carried out with justice to all parties concerned; and to this end by implication he was empowered to pass upon all questions of detail, such as proposed amendments, reasonably necessary to the determination of the main question—whether the election should be ordered.

The plaintiffs next insist the election should be enjoined because they are qualified electors residing within the area of the proposed new county, who will be prevented from voting at the election. On this important question the allegations of the complaint are as follows: "That section 1 of article VII of the Constitution of South Carolina provides, that upon due proceedings had as provided by law in such case, the Governor shall order an election upon the question of forming and creating a proposed new county; and that at such election all the qualified electors residing within the territory constituting the proposed new county shall have the right to vote in such election for or against the formation and creation of such new county.

"That section 576 of Volume I of the Code of Laws, 1902, of South Carolina provides, that for the purpose of such election the commisioners of election for each old county proposed to be cut shall appoint managers for each voting place in the area of the old county proposed to be cut off, and shall deliver to them the books of registration for those voting places, limiting and restricting the voting to such voting places as are located within the new territory, and

there is no provision of law for holding such election at precincts outside of the new territory.

"That pursuant to the last mentioned statute, the defendants have only ordered such election to be held within the territory constituting the proposed new county, and have instructed the managers of such election to allow only those electors registered at the polling precincts within the territory constituting the proposed new county to vote in such election, whether residing in such territory or not.

"That four of the plaintiffs, to wit, A. R. Parler, A. C. Smith, E. F. Irick, and George W. Smith, reside within the lines of the proposed new county, and are all duly qualified, registered electors in all particulars, and reside within the townships of Goodbye and Popular, in said county and State, and are duly registered to vote in all the voting places within said townships, to wit, at Dantzler's Mill and Elloree; but that while the greater portion of said townships and polling precincts are included within the proposed new county, the only voting places in said townships are left outside of the proposed new county, and there can be no other voting places within said townships unless created by the General Assembly; and that the defendants have not appointed managers or authorized the opening of these voting places for the election upon the question of forming and creating the proposed new county aforesaid; and that said plaintiffs will be entirely deprived of exercising their constitutional right of voting upon the said question; and there are numerous other qualified electors residing within the territory constituting the proposed new county aforesaid, situated and circumstanced precisely as the said plaintiffs, who will all be disfranchised in so far as this election is concerned.

"That all statutes or parts of statutes of South Carolina contravening the aforesaid provisions of the Constitution of this State, as hereinbefore stated, and depriving the qualified electors of their constitutional right to vote, are null and void and unconstitutional; and that the action or proposed action aforesaid of the defendants in holding or

attempting to hold the said election is null and void and without the sanction or authority of law."

Section 576 of the Civil Code, referred to in the petition, relating to new county elections, contains this enactment: "Such elections shall be conducted in the same manner as general elections in this State; and all persons entitled to vote under the Constitution and laws of this State at general elections shall be entitled to vote at such election."

Article II, section 9, of the Constitution, provides: "The General Assembly shall provide for the establishment of polling precincts in the several counties of the State, and those now existing shall so continue until abolished or changed. Each elector shall be required to vote at his own precinct, but provision shall be made for his transfer to another precinct upon his change of residence." Article VII, section 1, requires that, after the filing of the proper petition, "the Governor shall order an election by the qualified electors within the proposed area." The argument for injunction on this point may be thus summarized: The plaintiffs, and many others, are qualified electors within the area of the proposed new county, but registered at precincts not situated within such area; the Constitution does not allow them to vote except at their own precincts; the statute does not provide for an election at the precinct at which they are registered, without the area of the proposed new county, and the commissioners of election, acting under the statute, will not open the polls at such precincts, but only at those within the area of the proposed new county; the plaintiffs are not able to change their registration to the precincts within the proposed new county because their residence has not been changed. If it be admitted that the Constitution confers on the plaintiffs, and other electors in like situation, the right to vote on the new county issue, the conclusion cannot be avoided that the General Assembly has provided for an election and denied the right of suffrage conferred by the Constitution by failing to authorize the opening of any poll at which the right could be exercised. The ques-

tion made by the plaintiffs is obviously a serious one, but its decision in this proceeding would be premature. The right to vote at an election being a mere political right, the general rule is that it is not within equitable cognizance. *Darst* v. *People,* 62 Ill., 306; *Guebelle* v. *Epley,* 28 Pac., 89; *Harris* v. *Schryock,* 82 Ill., 119; *Roudanez* v. *City,* 29 La. Ann., 271; *Hardesty* v. *Taft,* 87 Am. Dec., 584; *Shoemaker* v. *City,* 3 L. R. A., N. S., 382, and note; McCrary on Elections, sec. 386; High on Injunctions, 1316. In some cases the courts have enjoined popular elections on issues similar to this, where there was no constitutional or statutory authority whatever for holding them. This doctrine has been applied principally where it was proposed under an unconstitutional statute to hold an election, the result of which would affect property rights. *Mayor* v. *Hughes* (Ga.), 36 S. E., 247; *Murfreesboro Ry.* v. *County Commissioners* (N. C.), 12 S. E., 952; *State* v. *Eggleston* (Kan.), 10 Pac., 3. But the power to interfere by injunction to prevent expression of the popular will by an election, if it exists, should be exercised with the greatest caution, and only where under the well-recognized rule of equity there is no other adequate legal remedy, and it is made clear that an irremediable wrong will result from holding the election.

In Paine on Elections, section 940, it is said: "The jurisdiction of any court, or of the whole judicial department of the government, to enjoin the expression of the popular will at a time, in the manner provided by statute, may well be doubted. If the election, when held, is not according to statute, or if the statute was enacted without any constitutional authority, the courts might very well hold the election invalid. But that is quite another thing from enjoining the people from peaceably assembling for casting their votes for, or against, any proposition submitted to them under the color of law." So far as our investigation extends, an injunction against the holding of an election by the people has never been issued in this State. It will rarely happen that a court can say in advance irremediable wrong will

result to individual electors from the result of an illegal election. Assuming a threatened denial of the right of electors to cast their ballots, this might turn out to be *damnum absque injuria,* for the election might result in favor of the side on which the complaining electors would have voted or the result might be so overwhelmingly against that side that the votes of all whose rights were threatened in advance would have no practical effect. The plaintiffs have a plain and adequate remedy at law by a writ of *certiorari* to test the validity of the election and their right to vote under the Constitution, if it should turn out a denial of their alleged right affected the result. *Segars* v. *Parrott,* 54 S. C., 1, 31 S. E., 677. For even under section 577 of the Civil Code, the decision of the State Board of Canvassers, on appeal, is not conclusive on questions of law.

The last allegation is that the registration laws of the State have not been complied with and that, therefore, there are no qualified electors within the proposed new county. It is no ground for this Court to enjoin an election, which the Constitution requires the Governor to order, that election officers or the people have not taken the proper steps to have qualified voters ready to cast their ballots. If there are no voters then there can be no election. It is not to be presumed election officers will allow persons to vote who are not entitled to suffrage, and there is no need to enjoin an election which the plaintiffs allege will entirely fail for lack of qualified voters. If illegal votes are permitted, attack may be made on the election after it is held, in the manner provided by law.

The petition for injunction is denied, and the complaint dismissed.