220 S.C. 469 (1951)
68 S.E.2d 421
BEAUFORT COUNTY
v.
JASPER COUNTY.
HEYWARD ET AL.
v.
BLACK, AUDITOR OF BEAUFORT COUNTY, ET AL.
16568
Supreme Court of South Carolina.
December 4, 1951.
*470 *471 *472 *473 *474 Messrs. C.W. MeTeer, of Beaufort, and Robinson, Robinson and Dreher, of Columbia, for Appellants, Beaufort County et al., and Floride P. Heyward and K.M. Johnson, and Calhoun Thomas, of Beaufort, for Appellants, J. Gary Black et al.
*475 Messrs. Randolph Murdaugh, of Hampton, and Thos. M. Boulware, of Allendale, for Respondents.
Report of E.W. MULLINS, Special Referee.
To the Presiding Judges of the Court of Common Pleas for Beaufort and Jasper Counties, South Carolina:
I, the undersigned Referee, have to report:
Two actions entitled as above were instituted in due time to determine the validity of an Act of the General Assembly, approved by the Governor on the 2nd day of June, 1950, annexing Yemassee Township, then in Beaufort County, to Jasper County. These cases, although pending in separate counties and differing as to the relief sought, raise the same basic issues by their challenge of the legality of the proposed annexation of Yemassee Township, in Beaufort County, to Jasper County.
*476 By order of Honorable J. Henry Johnson both actions were referred to the undersigned Referee with instructions to take the testimony and report his findings of fact and conclusions of law, the order further providing that the two actions should be tried together. This has been done and this report is the Referee's report in both of these cases.
The testimony was taken at Beaufort and the arguments were had before the Referee in Columbia.
The cases were ably argued by counsel on both sides, who also filed helpful briefs, and the Referee has given careful consideration to all of the contentions of the respective parties.
In both actions the validity of the Act of the General Assembly of May 31, 1950, approved June 2, 1950, 46 Stats. 2332, providing for the transfer and annexation of Yemassee Township, in Beaufort County, to Jasper County, is questioned on various grounds which will be hereinafter considered and discussed. It might be well to first quote the pertinent portions of the Act. The preamble (emphasis added) is as follows:
"Whereas, upon a certificate of the commissioners of election for Beaufort County filed in his office, the Secretary of State has duly certified to the General Assembly that at an election duly ordered and held in accordance with the provisions of the constitution and laws of the State of South Carolina on the question of whether or not that portion of Beaufort County lying West of New River and run of Great Swamp, known as and constituting Yemassee Township, shall be annexed to Jasper County, more than two-thirds of the votes cast in the said election were in favor of such annexation of said Yemassee Township to Jasper County; and,
"And whereas, the validity of the said election is now questioned; and whereas, upon the record before it the General Assembly finds that the said election was lawfully held and resulted in the required vote for the said annexation but, *477 in order to protect any possible rights the opponents of the said annexation may have the General Assembly desires to preserve for the opponents of the said annexation an opportunity to apply to the Courts for such relief as they may be entitled to in the manner hereinafter set out; and Whereas, if the said election is valid and if the word `area', in the sense in which it is used in the Constitution in Article 7, section 4, includes marsh lands and inland water, or either, as the same are defined and explained in the surveyors' report herein which is the meaning attributed to that word by the General Assembly in this act, then all of the conditions required by the Constitution and laws of this state were and have been complied with;"
Section 13 of the Act (emphasis added), is as follows: "This act shall be deemed a public act and take effect thirty days after the approval thereof by the Governor, unless within the said thirty days appropriate proceedings shall have been instituted in a Court of competent jurisdiction and if such proceedings are so instituted the act shall not take effect until a final decision is rendered in such proceedings so instituted, holding first, that the word `area' in the sense in which it is used in the Constitution in Article 7, Section 4, includes marsh lands and inland water, or either, as the same are defined and explained in the surveyors' report herein; and, second, deciding in the favor of the validity of the said election; or unless the said proceedings are dismissed without a decision on either of the said two questions and for other cause; in either of which two events this act shall thereupon immediately take effect; provided that this act shall never take effect should the final decision in said proceedings hold that said word `area' in the sense in which it is so used does not include marsh lands or inland water or should it decide against the validity of the said election and the Court or Courts may hear and determine any and all legal or constitutional questions affecting said annexation or election."
The Act makes its effective date depend upon, first, the institution of certain proceedings, and next upon final decision *478 in such proceedings and the two questions set out in the Act to be decided in such proceedings are:
First, the correctness of the Legislative finding upon the record before it (including the adjudication of the Commissioners of Election and the Certificate of the Secretary of State) that the election is valid, and
Second, the correctness of the Legislative finding that the word "area", in its constitutional sense, includes marsh lands and inland water, or either, and its finding upon the record before it (including stipulation No. 3 and the accompanying highway map) that the requisite area has been left in Beaufort County.
In addition to these questions, the Court may also decide any other legal questions properly before it.
Its jurisdiction comes from the Constitution and not this Act.
Before considering the various objections raised as as to the validity of the Act, it should be pointed out that most of the objections revolve around the contention that the effect of the annexation, if the Act is held valid, will be to reduce the "area" in Beaufort County below the 500 square miles required of all "old counties" by Article VII, section 4, of the Constitution of this State.
In both complaints it is alleged that the Act is illegal and unconstitutional for various reasons which will be hereinafter taken up and disposed of in detail. Since the objections go both to the constitutionality of the Act, and also depend upon the meaning and effect to be given to the language used therein, we shall first briefly advert to the rule which our Court has frequently announced with respect to the determination of the question as to whether or not an Act of the General Assembly is constitutional, and then to certain general rules which the Court has applied in determining the meaning and effect of legislative enactments generally.
In Gaud v. Walker et al., 214 S.C. 451, 53 S.E. (2d) 316, 320, the Supreme Court adverted to the following well settled principals which should govern *479 the Court in determining whether or not an act of the General Assembly violates any of the provisions of the State Constitution: "We approach the consideration of the various constitutional grounds upon which this legislation is challenged with the following well settled principles in mind: "The supreme legislative power of the State is vested in the General Assembly; the provisions of our State Constitution are not a grant but a limitation of legislative power, so that the General Assembly may enact any law not expressly, or by clear implication, prohibited by the State or Federal Constitution; a statute will, if possible, be construed so as to render it valid; every presumption will be made in favor of the constitutionality of a legislative enactment; and a statute will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution.' Moseley et al. v. Welch et al., 209 S.C. 19, 39 S.E. (2d) 133, 137."
The primary rule of construction, as to which all other rules for statutory construction is subservient, is that one which requires that the legislative intent must prevail if it can reasonably be discovered in the language used, which must be construed in light of the intended purpose, and hence the real purpose and intent of the lawmakers will prevail over the literal import of a statute. Greenville Enterprise v. Jennings, 210 S.C. 163, 41 S.E. (2d) 868; Caughman v. Columbia Y.M.C.A., 212 S.C. 337, 47 S.E. (2d) 788.
In construing a statute a court may not give to particular words a significance which would be clearly repugnant to the statute looked at as a whole and destructive of its obvious intent. Creech v. South Carolina Public Service Authority, 200 S.C. 127, 20 S.E. (2d) 645.
Another familiar rule is that, as between two possible constructions of a statute, that one should be adopted which effectuates rather than defeats the legislative purpose.
*480 As heretofore pointed out the objections raised with respect to the invalidity of the Act are identical in both complaints. (See subdivisions a to j, both inclusive, of paragraph 6, in the case of Beaufort County v. Jasper County, and subdivision a to j, both inclusive, of paragraph 7 of the complaint in the other case).
The plaintiffs allege that the Act in question is invalid and unconstitutional for a number of reasons, and we will consider the questions raised in the order set forth in the complaints (subdivisions a to j, inclusive).

Subdivision (A)
This objection is as follows: "Because the surveyors' report upon which the Commissioners based their finding that Beaufort County will be left after the annexation with more than 500 square miles of area, was made without an actual survey and through the use of inaccurate and unreliable hearsay information."
The law does not require the surveyors to make any actual survey of the area left in Beaufort County; and there is no evidence in the case from which it might be reasonably concluded that the surveyors used inaccurate or unreliable hearsay information in determining the area left in Beaufort County. Section 3030 of the Code provides that the surveyors shall settle the question of area. This they must do in view of the facts and the law. In settling the question of area the surveyors exercise a quasi judicial power. In this case the surveyors found a sufficient area, including marsh land. I therefore find and conclude that the surveyors followed the statutory procedure and therefore this objection must be overruled.

Subdivision (B)
This objection is as follows: "Because neither the surveyors nor the Commissioners in their purported determination of the area which would remain in Beaufort County after the proposed annexation took into consideration the fact that numerous legislative enactments *481 (e. g. XXV Statutes 636 (1907)); XXXIV Statutes 96 (1925); XXXVI Statutes 722 (1929); XLII Statutes 192 (1941) ceded sizable areas of Beaufort County to the Federal Government and that even more extensive areas of Beaufort County, the extent of which is not accurately known to the plaintiff's County officers but could have been ascertained by the surveyors, have been acquired by the Federal Government from the area of Beaufort County by methods other than cession."
There is no proof in the case that the surveyors and Commissioners did not take into consideration land ceded to the Federal Government; lands otherwise acquired by the Federal Government would not reduce the area of Beaufort County. The evidence on behalf of the plaintiff (testimony, page 4) shows that the area of United States Government lands in Beaufort County, exclusive of inland waters, is approximately 18 square miles. This, subtracted from the high lands plus marsh land, (exclusive of inland waters), leaves far more than the required 500 square miles.

Subdivision (C)
This objection is as follows: "Because the exclusion of land now owned and occupied by the Federal Government within the boundaries of Beaufort County would reduce the area of Beaufort County, after the annexation of Yemassee Township to Jasper County, below the limits required by Article VII, Section 4, of the Constitution."
Plaintiffs contend that the exclusion of land now owned and occupied by the Federal Government would reduce the area remaining in Beaufort County to less than 500 square miles. Lands merely owned and occupied would not reduce that area within the meaning of the constitutional provisions.
"Ownership and use for public purposes by the United States of lands within a state, without more, do not withdraw the lands from the jurisdiction of the state." Surplus *482 Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L. Ed. 1091.
Section 2042 of the Code provides: "In respect to the places within the boundaries ceded by the State to the United States, the jurisdiction of this State is concurrent with that of the United States, according to the terms of cession in each case respectively."

Subdivision (D)
This objection is as follows: "Because the Governor, upon the even division of the Commissioners as to whether Article VII, Section 4, of the Constitution had been violated, arbitrarily ordered the election without a factual or legal determination of the questions at issue."
The Governor's order directing the holding of the election contains a specific factual finding by him that sufficient area would remain in Beaufort County. For the purpose of ordering the election it is the Governor's prerogative to determine this question of area.
In State ex rel. Weeks v. Board of Registration, 87 S.C. 474, 70 S.E. 898, 905, the Court said: "The Constitution, § 1, art. 7, imposes exclusively upon the Governor the duty of determining whether there has been a compliance with the requirements of the Constitution preparatory to the ordering of an election, and the courts have not the wish or power to interfere with him in the exercise of executive prerogative or discretion. Lamar v. Croft, 73 S.C. [407] 412, 53 S.E. 540."
In Parler v. Fogle, 78 S.C. 570, 59 S.E. 707, 708, the plaintiff sought to enjoin an election on a new county upon the ground that the boundaries were not described with sufficient definiteness, and were not surveyed and plainly marked as required by statute, and because the lines had been run in disregard of townships and polling precincts, and further because the Governor allowed the petition presented to him to be amended. As to these matters, the Court *483 said: "There is nothing in the Constitution or statutes of the state requiring the lines of new counties to conform to township or precinct boundaries. The question whether the boundaries of the proposed new county were laid down in the petition with sufficient definiteness was for the governor to determine. Lamar v. Croft, 73 S.C. 407, 53 S.E. 540; State ex rel. Resse v. Ansel, Governor [78 S.C. 331], 58 S.E. 933. So also it was within the discretion of the Governor to refuse or allow the amendment to the petition before him setting forth with more definiteness the boundaries. The Constitution proceeds on the theory that the Governor, with respect to all proceedings before him, will see that its provisions are carried out with justice to all parties concerned; and to this end by implication he was empowered to pass upon all questions of detail, such as proposed amendments, reasonably necessary to the determination of the main question whether the election should be ordered."

Subdivision (E)
This objection is as follows: "Because the election held on January 24, 1950 was illegal and of no effect in that persons were permitted to vote who had not fulfilled the requirements of Article II, Section 4 of the Constitution, and Section 2267 of the Code by residing within the State for two years, within the County for one year, and within the voting precinct for four months; and in that persons were permitted to vote who had not legally registered themselves as electors pursuant to Article II, Section 4 of the Constitution, and Section 2272 of the Code, by applying in person for registration. That if only persons had been permitted to vote who were legally qualified to vote, the result of the election would have been in opposition to the proposed annexation."
In the opinion of the Referee the alleged irregularities in the election about which the plaintiffs complain cannot now be raised and determined in these actions.
*484 The case of Segars v. Parrott, 54 S.C. 1, 31 S.E. 677, 865, establishes the rule that the validity of an annexation election is determined by the election commissioners and the report of these commissioners is final unless properly appealed from. See also Parler v. Fogle, 78 S.C. 570, 59 S.E. 707; Abernathy v. Wolfe, 117 S.C. 545, 109 S.E. 275.
The plaintiffs in their brief recognize the rule established by these decisions, but contend that it has no application since they contend that the legislative intent as disclosed by the terms of the Act was to permit the contestant to contest the election upon any ground as to its illegality or irregularity. I do not so construe the Act. The Act says, "upon the record before it the General Assembly finds that the said election was lawfully held and resulted in the required vote for the said annexation but, in order to protect any possible rights the opponents of the said annexation may have the General Assembly desires to preserve for the opponents of the said annexation an opportunity to apply to the Courts for such relief as they may be entitled to in the manner hereinafter set out; * * *." (Emphasis added).
It seems to me the evident intent of the Legislature was merely to postpone the effective date of the Act to permit the contestants to apply to the Court for any possible rights they might have to contest the election, and the Legislature did not intend by this act to renew or give validity to any rights which contestants may have had but which they had lost by failure to follow the proper legal procedure. In other words, I do not believe the Act intended changing the rule of law announced in the Segars case, that the decision of the Commissioners is final unless reviewed in the manner provided by law.
However, assuming that the Act authorizes the contestants to raise the objections set out in Subdivision (E), supra, I find that the plaintiffs have not made out a sufficient case to justify the setting aside of the election *485 on any of the specified grounds. The plaintiffs offered considerable testimony as to alleged irregularities in this election which was taken subject to defendants' objection. Even if this testimony should be admitted in evidence it is not sufficient to change the result of the election. Furthermore, I hold that this evidence is not admissible. Fraser v. James, 65 S.C. 78, 43 S.E. 292.

Subdivision (F)
This objection is as follows: "Because, even on the erroneous calculations of the surveyors as to the area remaining in Beaufort County after the proposed annexation, 500 square miles of area will not remain in Beaufort County since neither land between high water mark and low water mark, nor so-called inland waters, can be considered in computing the area of Beaufort County under the Constitutional requirements."
It is immaterial whether or not lands between high and low water marks and inland waters constitute area. I find from the evidence that there is sufficient high ground and marsh land to leave more than 500 square miles in Beaufort County.

Subdivision (G)
This objection is as follows: "Because the Act of May 31, 1950, providing for the annexation makes findings as to compliance with the Constitutional requirements which are not supported by the record before the General Assembly, and are at variance with the true facts."
This subdivision is in very general terms. The plaintiffs have failed to produce any evidence to justify a conclusion that the legislative findings as to compliance with the constitutional requirements are not supported by the record before the General Assembly, or that such findings are at variance with the true facts. Furthermore, the Legislature itself is charged with the duty of determining whether the constitutional requirements in respect to annexation or the creation *486 of a new county have been complied with, and thus its determination of those facts cannot be assailed by evidence aliunde the record. Fraser v. James, 65 S.C. 78, 43 S.E. 292.

Subdivision (H)
This objection is as follows: "Because the Act of May 31, 1950 providing for the annexation unconstitutionally leaves the determination of whether the Constitutional requirements have been complied with to the Court in derogation of Section 3035 of the Code which requires the General Assembly itself to determine whether the Constitutional requirements have been complied with."
The Act does not leave to the Courts the determination whether the constitutional requirements have been complied with. The General Assembly in the preamble to the Act has expressly made that determination itself, and has merely provided that the Act shall not go into effect should the Court in any action brought pursuant to the permission granted by the Act, set aside the election as irregular or hold that the General Assembly was wrong in the meaning which it ascribed to the word "area" in the Act.
The fact that the Legislature saw fit to make the Act effective only on the happening of a certain contingency does not affect the validity of the Act. The applicable rule is stated in 11 Am. Jur., p. 926, § 216, as follows: "The rule is well settled that while the Legislature may not delegate its power to make a law, it may make a law to become operative on the happening of a certain contingency or future event. Moreover, in general it makes no essential difference what is the nature of the contingency if it is essentially just and legal. The reason for this rule is that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the Legislature. If the law is in its provisions a complete statute in other respects, its taking effect may be made conditional upon some subsequent event. When that event happens, *487 the statute takes effect and becomes the law by force of legislative action as fully as if the time when it should take effect had been unconditionally fixed."

Subdivision (I)
This objection is as follows: "Because the final passage in the South Carolina Senate of the Act of May 31, 1950 was accomplished through an improper and illegal suspension of the rules of the Senate and the setting of an arbitrary time for a vote upon the Bill."
This objection is without merit. Where an act has been duly signed by the presiding officers of the General Assembly and approved by the Governor and duly enrolled in the office of the Secretary of State evidence outside the Act itself offered to show that the Act was not passed in compliance with law is incompetent to impeach the act. State v. Moorer, 152 S.C. 455, 150 S.E. 269. An act which has been enrolled and signed by the presiding officers of the Senate and House of Representatives is conclusively presumed by the Court to have been properly passed. State v. Lewis, 181 S.C. 10, 186 S.E. 625.

Subdivision (J)
This objection is as follows: "Because the General Assembly, in passing the Act of May 31, 1950 providing for the annexation, has expressly directed that Article VII, Section 4 of the Constitution be violated by ordering the annexation if only 493.5 square miles (the area of high ground and inland water as found by the surveyors) remain in Beaufort County, although Article VII, Section 4 of the Constitution requires that at least 500 square miles remain in the County."
In as much as the record shows that high ground and inland water would not leave the required area in Beaufort County, the defendants have conceded that the portion of the Act providing for the annexation, if marsh lands be not included in the area, is invalid.
*488 In the preamble the General Assembly has specifically found: "* * * and if the word `area' * * * includes marsh lands and inland water, or either * * * which is the meaning attributed to that word by the General Assembly in this act * * * then all of the conditions required by the Constitution and laws of this state were and have been complied with".
And the record shows that high ground plus marsh land leaves more than the required area in Beaufort County. It is therefore manifest that the constitutional requirement as to area is complied with even if inland water be eliminated entirely. The record before the General Assembly shows the square miles of area in all three categories so that as a matter of pure mathematics the invalid portion of the Act is separable from the valid portion; the two portions of the Act are not dependent upon each other as conditions or considerations for each other so as to warrant the belief that the General Assembly would not have passed the residue independently of the part that is void; and on the contrary the General Assembly has specially found in the second section of the preamble: "And whereas, * * * if the word `area' * * * includes marsh land and inland water, or either * * * which is the meaning attributed to that word by the General Assembly in this act, then all of the conditions required by the Constitution and laws of this state were and have been complied with".
From all of which it is clearly manifest that the Legislature would have passed this Act entirely independently of inland water and actually did so and furthermore, expressed its intent of so doing by the use of the words just quoted.
In Townsend v. Richland County, 190 S.C. 270, 31, 32 2 S.E. (2d) 777, 781, the Supreme Court says:
"The rule is that where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions, and considerations for each other, so as to warrant the *489 belief that the Legislature intended them as a whole, and if they cannot be carried into effect, the legislature would not have passed the residue independently of that which is void, the whole act is void. On the other hand, where a part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such a character as that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder."

Area
Having dealt with the specific objections to the Act as set forth in the complaint there is left for consideration the question of what the word "area" includes in the sense in which it is used in the Constitution.
The evidence offered as to area, aliunde the record before the General Assembly is inadmissible. Fraser v. James, 65 S.C. 78, 43 S.E. 292.
The testimony of Mr. Black, County Auditor for Beaufort County, shows that territory in Beaufort County belonging to the United States consists of 18 square miles of high ground. It is therefore apparent that the high ground plus marsh land, less such United States area, leaves far more than 500 square miles, inland water excluded.

Fact Findings of Area
The law apparently provides three different fact findings of area: First, the surveyors; second, the Governor, and third, the Legislature. Here all three have concurred and I see no reason why they should not be permitted to concur.

What Is Area
I am of opinion that area certainly includes high ground and marsh land, and the record shows that the high land and marsh land in Beaufort County exceeds the 500 square miles after the 18 square miles of United States territory are deducted.
*490 Article VII, Section 4, of the Constitution provides: "No old County shall be reduced to less area than five hundred square miles, to less assessed taxable property than two million dollars, nor to a smaller population than fifteen thousand inhabitants."
This provision of the Constitution that two million dollars of assessed taxable property be left in the old county indicates that the makers of the Constitution in using the word "area" had no intention of dividing the area of the county into high land and marsh land or high land and inland water or valuable land or worthless or non-taxable land.
The framers of the Constitution certainly knew the difference between high land and marsh land. If they had intended that 500 square miles of high land should be left in the old county they would have used the words "high land" instead of the word "area". Area has been defined as:
"The surface contents of any figure." Webster's Dictionary.
"The amount of surface included within a boundary line or enclosing a solid figure; superficial extent; as, the area of a triangle; the area of tillage was four acres." Funk & Wagnall's New Standard Dictionary. (Emphasis added.)
I am of the opinion, and so hold, that the soil under water between high and low water mark constitutes land. See State v. Pacific Guano Co., 22 S.C. 50 (decided in 1884) and decree of Circuit Court Judge Maher in State v. Oak Point Mines, reported by order of the Supreme Court, in the Appendix to Volume 22 of South Carolina Reports. It therefore follows that marsh land and inland water likewise constitute land, the subject of state and private ownership. Here, again, the framers of the Constitution of 1895 must have contemplated that any kind of land within the boundaries of the county would be covered by the term "area", as used in the constitutional provision in question.
*491 I conclude as a matter of law that the word "area" in the sense in which it is used in the Constitution in Article VII, Section 4, includes both marsh lands and inland waters, as the same are defined and explained in the surveyors' report herein.
I also find, for the reasons heretofore stated, that the election referred to in the said Act was valid and not subject to attack in these proceedings for any of the reasons set forth in the complaint herein.
I further find that the Act providing for the transfer and annexation of Yemassee Township of Beaufort County to Jasper County is not unconstitutional or invalid by reason of any of the objections urged by the plaintiffs in either of the two cases.
It is accordingly recommended that the Act in question be declared valid and that the complaint in each of the two suits be dismissed.
The Referee is filing the original of this report with the Clerk of Common Pleas for Beaufort County and a duplicate original of the same with the Clerk of Court of Common Pleas for Jasper County.
December 4, 1951.
PER CURIAM.
The above captioned cases raise the same basic issues. They were heard together in the Court below and in this Court. The primary question in each case is the validity of the proposed annexation of a portion of Beaufort County to Jasper County. The Act providing for such annexation was approved by the Governor on June 2, 1950, 46 St. at L. 2332.
By consent of the parties, both cases were referred to Honorable E.W. Mullins, of the Columbia Bar, as Special Referee, to take and report the testimony, together with his conclusions of law and fact. After taking certain testimony and hearing arguments, he filed a report upholding the legality *492 of the annexation. The cases were thereafter heard by the Resident Judge of the Fourteenth Circuit, Honorable J. Henry Johnson, on exceptions to the report of the Referee. A decree was filed in each case confirming the report of the Special Referee and making it the judgment of the Court. This appeal followed.
We are satisfied with the conclusions reached by the Referee and Judge Johnson. All exceptions are overruled and the able and comprehensive report of the Referee, which will be reported, is adopted as the opinion of this Court, with the following exception:
The Referee concluded that in determining whether five hundred square miles of area would remain in Beaufort County after the proposed annexation of Yemassee Township to Jasper County, it was proper to consider both "inland water" and marshlands. We think it is unnecessary to determine whether inland waters may be considered a portion of Beaufort County's area within the contemplation of Article 7, Section 4 of the Constitution, for, as stated by the Referee, it is "manifest that the constitutional requirement as to area is complied with even if inland water be eliminated entirely." Under these circumstances, we prefer not to pass upon the question of whether inland waters may be included in computing the area of a county under the foregoing constitutional requirement.
Affirmed.