23599

The TOWN OF HILTON HEAD ISLAND, South Carolina; Ben J. Racusin; Michael J. Malanick; Martha Baumberger; A.S. Carota; Tom Crews; Dana Connor; Robert B. Sullivan; Billy Bremer; Chester C. Williams; and David G. McNair, Jr., in their capacity as Freeholders and Taxpayers; Community Services Associates, Inc.; Association of Sea Pines Plantation Property Owners, Inc. and The Advisory Board, Respondents v. The COALITION OF EXPRESSWAY OPPONENTS, an unincorporated Association; Tom Walton and Carol Ann Bernier, for themselves and as Representatives of the Class of all other persons who are similarly situated, Appellants, and Joseph J. Rideoutte, Executive Director of the South Carolina Department of Highways and Public Transportation, Respondent.

(415 S.E. (2d) 801)

Supreme Court

*Edward E. Bullard,* Hilton Head Island, *for appellants.*

*Curtis L. Coltrane,* of *Wilson and Coltrane, P.A.;* and *Roberts Vaux,* Hilton Head Island, *for respondents The Town of Hilton Head Island, South Carolina, et al.*

*Victor S. Evans,* of *South Carolina Dept. of Highways and Public Transp.,* Columbia, *for respondent Joseph J. Rideoutte.*

*Roy D. Bates,* Columbia, *for amicus curiae, Municipal Ass'n of South Carolina.*

Heard Jan. 8, 1992.

Decided Mar. 16, 1992.

HARWELL, Chief Justice:

We are presented with an issue of first impression in this State: whether a court may undertake a pre-election review of an ordinance initiated by registered voters, and alleged by the municipality to be facially defective. The master-in-equity held that pre-election review is proper. We affirm.

## I. FACTS

The Select Oversight Committee of the Strategic Highway Plan for Improving Mobility and Safety Fund (SHIMS)[1] authorized financing for a proposed cross-island route traversing the Town of Hilton Head Island (Town). The South Carolina Department of Highways and Public Transportation (SCDHPT) contemplates collecting tolls from users of the cross-island route to reimburse the SHIMS fund. While the Town was in the process of approving SCDHPT's final proposed plans for construction of the cross-island route,[2] the Coalition of Expressway Opponents (CEO) circulated a petition pursuant to South Carolina's initiative and referendum statute[3] for the purpose of initiating the following ordinance:

> The Town of Hilton Head Island shall be required to secure the approval, by referendum, of a majority of the eligible voters residing within the town limits before the Town of Hilton Head Island may permit or approve the collection of a toll or similar fee from any of its residents or property owners or their family members or guests for the use of, or right to use, any road or bridge located in whole or in part within the Town limits, regardless of any

---

[1] In 1987, the General Assembly funded SHIMS with revenues derived from gasoline taxes. S.C. Code Ann. § 12-27-1260 (Supp. 1991). Money from the SHIMS fund is segregated for the purpose of engineering, planning, right-of-way acquisition, and construction of roadway projects given priority by the SHIMS Select Oversight Committee. *Id.* and S.C. Code Ann. §§ 12-27-1280 and 12-27-1300 (Supp. 1991). SCDHPT must review projects on the SHIMS priority list to determine the feasibility of defraying the cost of constructing each project by imposing a toll on users of the project. S.C. Code Ann. § 12-27-1290 (Supp. 1991).

[2] The Town has authority to review and approve SCDHPT plans pursuant to S.C. Code Ann. § 57-5-830 (1991), which provides in part:

In every case of a proposed permanent improvement, construction, reconstruction, or alteration by the [SCDHPT] of any highway or highway facility within a municipality, the municipality may review and approve the plans before the work is started. . . .

[3] S.C. Code Ann. § 5-17-10 (Supp. 1991) provides:

The electors of a municipality may propose any ordinance, except an ordinance appropriating money or authorizing the levy of taxes. Any initiated ordinance may be submitted to the council by a petition signed by qualified electors of the municipality equal in number to at least fifteen percent of the registered voters at the last regular municipal election and certified by the municipal election commission as being in accordance with the provisions of this section.

approval by the Town of Hilton Head Island, given without any such referendum, to charge a toll or similar fee.

The petition was duly certified and presented to Town Council. However, Town Council refused to adopt the initiated ordinance or to submit it to the electorate.[4] Thereafter, the Town and various taxpayers, later joined by Community Services Associates, Inc., the Association of Sea Pines Property Owners, Inc., and the Advisory Board as intervenor-plaintiffs[5] (collectively respondents), brought a declaratory judgment action against the CEO and two spokespersons for the CEO (appellants), seeking a determination of the validity of the initiated ordinance, and of the Town's obligation to conduct an election if the initiated ordinance were deemed to be facially invalid.

A hearing was held before a master-in-equity. In a well-reasoned and persuasive order, the master-in-equity concluded that the initiated ordinance was defective on its face, and that the Town was not required to submit the initiative to the electorate for a vote.

## II. DISCUSSION

### A. STANDING

Appellants initially assert that the master-in-equity erred in finding that respondents have standing to pursue this action. Appellants claim that the Town has an absolute duty to submit the initiated ordinance to the electorate, and that the Town has no interest which is adversely impacted by this litigation. We disagree.

The purpose of a declaratory judgment action is to settle and afford relief from uncertainty and insecurity to a party

---

[4] S.C. Code Ann. § 5-17-30 (1976) provides:

If the council shall fail to pass an ordinance proposed by initiative petition or shall pass it in a form substantially different from that set forth in the petition therefor . . ., the adoption . . . of the ordinance concerned shall be submitted to the electors not less than thirty days nor more than one year from the date the council takes its final vote thereon. The council may, in its discretion, and if no regular election is to be held within such period, provide for a special election.

[5] The intervenor-plaintiffs contend that the proposed ordinance, if passed, could impair their contractual right to collect a toll from persons entering Sea Pines Plantation, a resort lying within the municipal limits of the Town of Hilton Head Island.

with respect to that party's rights, status, and other legal relations. S.C. Code Ann. § 15-53-130 (1976). A party whose rights, status, or other legal relations are affected by a statute may seek a court's determination of any question of construction or validity of the statute and obtain a declaration of the party's rights, status, or other legal relations thereunder. S.C. Code Ann. § 15-53-30 (1976).

We have not previously construed the initiative and referendum statute to determine whether a municipality has a mandatory obligation to submit an invalid ordinance to the electorate. Clearly, the Town has standing to obtain a declaration of its duties under the initiative and referendum statute. This Court can render a declaratory judgment when a justiciable controversy settling legal rights of the parties exists. *Pee Dee Electric Cooperative, Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 301 S.E. (2d) 761 (1983). We hold that the master-in-equity did not err in holding that respondents have standing to bring this action.[6]

## B. JURISDICTION TO UNDERTAKE PRE-ELECTION REVIEW

Appellants next assert that the master-in-equity erred in finding that he had jurisdiction to conduct a pre-election review of the initiated ordinance. We disagree.

Appellants urge that this Court previously has held that the validity of an ordinance cannot be attacked prior to enactment. Appellants rely on *Parler v. Fogle*, 78 S.C. 570, 59 S.E. 707 (1907), in which the plaintiffs sought an injunction against the holding of an election. We held in *Parler* that a court rarely, if ever, may assume jurisdiction to enjoin the expression of the popular will at a time and manner provided by statute. *Id.* at 575, 59 S.E. at 708. We adhere to our holding in *Parler. Accord, Fletcher v. City of Paris*, 377 Ill. 89, 35 N.E. (2d) 329 (1941) (election is a political matter; courts possess no jurisdiction to check the free expression of opinion). However, we find that *Parler* stands for a proposition that is distinguishable from the question presented in this case. Respon-

---

[6] Because we hold that the Town has standing to bring this action, we need not address standing as to the remaining respondents.

dents are not seeking to enjoin the electorate from exercising its right to vote. We are asked instead to determine the validity of an initiated ordinance in advance of the ballot, before the Town expends public monies on what could be a useless act. Finding no South Carolina case directly on point, we direct our attention to other state court decisions regarding the issue of whether a court has jurisdiction to undertake pre-election review of a facially defective initiated ordinance.

Our tripartite system of government traditionally precludes the judicial branch from impinging on the legislature's exercise of a power vested in that body. *See Culbertson v. Blatt*, 194 S.C. 105, 9 S.E. (2d) 218 (1940). The general populace acts as a legislative branch of the municipal government when it exercises its statutory right to initiate an ordinance. *City of DeLeon v. Fincher*, 344 S.W. (2d) 743 (Tex. Civ. App. 1961). Thus, some courts view initiated ordinances as tantamount to acts perpetrated by the legislature, and hold that the judicial branch may not interfere with the initiative process. *See, e.g., State ex rel. Kittel v. Bigelow*, 138 Ohio St. 497, 37 N.E. (2d) 41 (1941). Although we acknowledge the split of authority on the subject of pre-election review, we find that the better-reasoned analysis allows the judiciary to review an initiated ordinance before it is submitted to the electorate when a municipality claims the initiated ordinance is facially defective. We are convinced that if an initiated ordinance is facially defective in its entirety, it is "wholly unjustified to allow voters to give their time, thought, and deliberation to the question of the desirability of the legislation as to which they are to cast their ballots, and thereafter, if their vote be in the affirmative, confront them with a judicial decree that their action was in vain. . . ." *Schultz v. City of Philadelphia*, 385 Pa. 79, 86, 122 A. (2d) 279, 283 (1956). *See also Fossella v. Dinkins*, 66 N.Y. (2d) 162, 485 N.E. (2d) 1017, 495 N.Y.S. (2d) 352 (1985); *West Hartford Taxpayers Ass'n v. Streeter*, 190 Conn. 736, 462 A. (2d) 379 (1983); *Dade County v. Dade County League of Municipalities*, 104 So. (2d) 512 (Fla. 1958). We conclude that the master-in-equity did not err in holding that he had jurisdiction to conduct a pre-election review of the initiated ordinance. Having determined that pre-election review is appropriate, we now turn to the issue of the validity of the initiated ordinance.

## C. VALIDITY OF ORDINANCE AND THE TOWN'S OBLIGATIONS UNDER S.C. CODE ANN. § 5-17-10 to -30 (1976 & Supp. 1991)

Courts recognizing the propriety of pre-election review will not interfere with the submission of an initiated ordinance to the electorate if the initiated ordinance can be construed to be legally operative in part, even though ultimately a court might need to determine which aspects of the initiated ordinance are invalid. *Dade County*, 104 So. (2d) at 515. Appellants contend that even if the initiated ordinance is subject to pre-election review, it is not invalid in its entirety and should be submitted to the electorate. We disagree.

Municipalities have no authority to set aside the structure and administration of any governmental service or function, the responsibility for which rests with the state government or which requires statewide uniformity. S.C. Const. art. VIII. § 14. The planning, construction, and financing of state roads is a governmental service which requires statewide uniformity. S.C. Code Ann. § 57-3-10 to -30 (1976 & Supp. 1991). The legislature has declared that collecting tolls is an appropriate method of financing highways and appurtenant facilities. *See* S.C. Code Ann. § 12-27-1290 (Supp. 1991); *see also* S.C. Code Ann. §§ 57-5-1310 to -1490 (1991). We find that the initiated ordinance is facially defective in its entirety because it sets aside the structure and administration of the statewide highway scheme by attempting to limit the authority granted to the SCDHPT to consider the collection of tolls as a method of financing the construction of state roads. When a municipality enacts an ordinance which conflicts with state law, the ordinance is invalid. *State v. Solomon*, 245 S.C. 550, 141 S.E. (2d) 818 (1965). An electorate has no greater power to legislate than the municipality itself. *City & County of San Francisco v. Patterson*, 202 Cal. App. (3d) 95, 248 Cal. Rptr. 290 (1988). An initiated ordinance which is facially defective cannot be cured by adoption by the electorate. *State ex. rel Davies v. White*, 36 Nev. 334, 136 P. 110 (1913).

Because the initiated ordinance is facially defective in its entirety, we find that the Town has no obligation to place the initiated ordinance on the ballot. Appellants possess no right to obtain a vote to enact invalid legislation. *See Utz v. City of Newport*, 252 S.W. (2d) 434 (Ky. 1952). A court should not

compel the doing of a vain thing and the useless spending of money. *Id.* We accordingly hold that the master-in-equity did not err in holding that the initiated ordinance is facially defective in its entirety, and that the Town need not submit the initiated ordinance to the electorate pursuant to the initiative and referendum statute.

## D. ADMINISTRATIVE SUBJECT MATTER OF INITIATED ORDINANCE

The master-in-equity also found that the initiated ordinance related to an administrative measure, and was not a proper subject for a legislative enactment. We agree.

Administrative measures are not proper subjects for initiated ordinances. Only legislative questions may be referred to a vote of the people. *State ex rel. Boynton v. Charles,* 136 Kan. 875, 18 P. (2d) 149 (1933). An administrative measure is an enactment which puts into execution previously declared policies or previously enacted laws. When an act carries out an existing policy of a legislative body, it is administrative whether the policy came into existence by an enactment of the body itself, in the organic law creating the body, or by an enactment of a superior legislative body. 42 Am. Jur. (2d) *Initiative and Referendum* § 12 (1969). *See also Foster v. Clark,* 309 Or. 464, 790 P. (2d) 1 (1990); *Burdick v. City of San Diego,* 29 Cal. App. (2d) 565, 84 P. (2d) 1064 (1938).

If the Town possesses any authority to approve the collection of tolls, that authority would be derived from S.C. Code Ann. § 57-5-830 (1991), which grants municipalities the discretion to review and approve SCDHPT's plans for construction of highways within the municipality before work is commenced. Clearly, when a municipality reviews and approves plans, it undertakes the administrative act of carrying out existing policies of the legislature. Accordingly, we hold that the master-in-equity did not err in holding that appellant's initiated ordinance related to an administrative act, and thus was an improper subject for an ordinance.

In sum, we affirm the master-in-equity's findings that: (1) the Town had standing to bring this action; (2) he had jurisdiction to hear this matter; (3) the initiated ordinance is facially defective in its entirety; (4) the Town has no duty to submit

the invalid initiated ordinance to the electorate pursuant to section 5-17-30; and (5) the initiated ordinance relates to an administrative act, and thus is an improper subject for an ordinance. We emphasize that these are findings which can be made pursuant to judicial inquiry only, and that a municipality has no power to pass on the validity of an initiated ordinance; a declaratory judgment action is the appropriate method by which a municipality may seek pre-election review of an initiated ordinance. *Cf. West Palm Beach Ass'n of Firefighters v. Board of City Commissioners*, 448 So. (2d) 1212 (Fla. Dist. Ct. App. 1984) (declaratory relief preferred procedure to resolve issue of whether city must submit initiated ordinance to electorate). The order of the master-in-equity is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.