# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
August 17, 2011 Session

## RON LITTLEFIELD v. HAMILTON COUNTY ELECTION COMMISSION, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 10-C-1078     W. Jeffrey Hollingsworth, Judge**

---

**No. E2010-02410-COA-R3-CV-FILED-NOVEMBER 3, 2011**

---

Chattanooga's mayor, the subject of a recall petition, filed suit against the county election commission, seeking a declaratory judgment that the petition process was flawed and to enjoin the election commission from placing the recall issue on the November 2010 election ballot.  The trial court found the election commission could not lawfully certify the recall petition due to noncompliance with applicable statutory provisions and enjoined the placement of the recall issue on the ballot. The leader of the recall effort appeals.  We find that the trial court acted without jurisdiction in entering an injunction against the election commission.  The judgment of the trial court is vacated and the complaint dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Dismissed**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Harry F. Burnette, Frank P. Pinchak, and William H. Payne, IV, Chattanooga, Tennessee, for the appellant, James Folkner.

Harold L. North, Jr., Frederick L. Hitchcock, and Tom Greenholtz, Chattanooga, Tennessee, for the appellee, Ron Littlefield.

J. Christopher Clem, Chattanooga, Tennessee, for the appellee, Hamilton County Election Commission.

Michael A McMahan and Phillip A. Noblett, Chattanooga, Tennessee, for the intervening appellee, City of Chattanooga.

# OPINION

## I. BACKGROUND

Ron Littlefield ("the Mayor") is the duly elected and incumbent Mayor of the City of Chattanooga, Tennessee ("the City"). The Mayor's term extends until April 2013. During the summer of 2010, certain groups and individuals in the City sought the recall and removal of the Mayor from office.

On June 16, 2010, the Hamilton County Election Commission ("the Election Commission") certified and approved the form of a petition to be circulated and signed by qualified voters seeking an election for the recall and removal of the Mayor. Operating under the assumption that a sufficient number of signatures would be collected by August 31, 2010, the Election Commission also announced that it would schedule the recall election for the November 2010 general election.[1]

The Election Commission subsequently began receiving papers bearing signatures purporting to endorse the recall petition. The Election Commission reviewed the voting qualifications of those persons who signed the recall petition and, for those signatures found to be valid by the Election Commission, a check mark was placed next to that name by the staff.

On August 5, 2010, the Election Commission met and determined that the number of signatures of registered voters of the City required to support the recall petition would be computed according to the provisions of Section 3.18 of the City Charter, which requires that a recall petition be signed by "qualified voters equal in number to at least fifty per centum (50%) of the entire vote for all candidates for the office of mayor cast at the last preceding general municipal election . . . ." The Election Commission determined that if the number of signatures were calculated under the provisions of the City Charter, then 8,957 valid petition signatures would have been required for certification of the recall petition.

On August 31, 2010, the Mayor filed a verified complaint for declaratory judgment and injunctive relief against the Election Commission to prevent the Election Commission from making a final decision as to whether to certify a recall petition at a regularly scheduled

---

[1]According to the City Charter: "If by their certificate the petition is shown to be sufficient, the said board of election commissioners shall at once order and fix a date for holding said election not less than thirty (30) days nor more than sixty (60) days from the date of their certificate showing that a sufficient petition is filed. . . . ."

commission meeting set for September 8, 2010. Among other things, the Mayor asserted that Tenn. Code Ann. § 2-5-151(d) (Supp. 2011), and not the City Charter,[2] set forth the minimum number of valid signatures needed to support a recall petition. The statute requires that "[p]etitions shall be signed by at least fifteen percent (15%) of those registered to vote in the municipality or county." *See* Tenn. Code Ann. § 2-5-151(d). The Mayor contended that if state law governed the minimum number of qualified signatures needed to support the petition, then 14,854 valid petition signatures would be required for certification of the recall petition in this case.[3]

---

[2]In August 2004, the Tennessee Attorney General observed that another state statute supersedes certain provisions of the City's Charter (opining that "[t]his Office has previously concluded that Tenn. Code Ann. § 6-53-108(a) supersedes conflicting recall petition requirements found in the Chattanooga City Charter."). Tenn. Op. Atty. Gen. No. 04-135, 2004 WL 2077453 (Aug. 23, 2004). The Attorney General noted:

> The next question is whether Tenn. Code Ann. 6-53-108 supersedes all municipal charter provisions addressing such recall petitions. This statute provides:
>
> > (a) The charter of any municipality to the contrary notwithstanding, any petition or petitions required to be filed under a municipal charter in order to cause a recall election of whatever type or kind, whether in the nature of a new municipal election prior to the next regular election or otherwise, shall contain one (1) or more specific grounds for removal.
> >
> > (b) This section shall be construed to be remedial and shall be given a liberal and retroactive effect where legally permissible.
>
> It should be noted that, as a general matter, any governmental entity having a charter provision for a petition for recall must also meet the requirements of Tenn. Code Ann. § 2-5-151. A contrary charter provision of a municipality or county that is enacted after July 1, 1997, will control with respect to the minimum number of signatures required in a petition and to provisions relating to the seventy-five-day deadline for filing of a petition after final certification by the county election commission. Tenn. Code Ann. § 2-5-151(j). Whether either of these statutes supersedes a municipal charter provision on recall depends on whether the municipal charter conflicts with either of these statutes. Any charter provision that conflicts with Tenn. Code Ann. § 6-53-108 is superseded by that statute. Op. Tenn. Att'y Gen. 87-138 (August 11, 1987).

[3]The Deputy City Attorney opined: "There appears to be some controversy on the application of T.C.A. § 2-5-151(d) because T.C.A. § 2-5-151(j) also states: 'This section shall control notwithstanding any statutory provision or Charter provision of a municipality or county to the contrary; provided, that any contrary Charter provision of a municipality or county which is enacted after July 1, 1997, shall control with respect only to the requirements set forth in subsection (d) relating to the statutory minimum number of

(continued...)

The Mayor also challenged the validity of the Election Commission's acceptance of certain undated signatures as failing to comply with the requirements of Tenn. Code Ann. § 2-5-151(e)(4) that all signatures affixed to a recall petition be dated. It was purported that of the more than 9,600 signatures accepted by the Election Commission as being signatures of registered city voters, well more than half of these signatures were undated. According to the Mayor, only 4,281 signatures from registered city voters complied with the requirement of state law that the signatures be dated.

Additionally, the Mayor asserted that the process by which the recall petition was circulated violated state law. He argued that the form of the petition to which many of the signatures were attached failed to comply with Tenn. Code Ann. § 2-5-151 because it:

> \* Did not set forth any question proposed for a vote of the people, and, more specifically, failed to set forth the full text of the question of whether the Mayor shall be recalled,[4] as required by Tenn. Code Ann. § 2-5-151(b)(2), (e)(1), (f)(2), and (i); and

> \* Did not contain an accurate description of the recall process as set forth in Tenn. Code Ann. § 2-5-151, but instead represented that the Mayor is "automatically recalled" once the required number of signatures is obtained.

---

[3](...continued)
signatures required in a petition, and to the provisions of subdivision (f)(1) relating to the seventy-five day deadline for filing of a petition after final certification by the County Election Commission.'"

. . . [T]he amended and restated Charter was voted on and approved by all voters of the City of Chattanooga in 2002. . . . [T]here could be compelling legal arguments made both ways that Section 2-5-151 is controlling and would require 15,262.05 signators on a recall as required by general State law or that under the amended and restated Chattanooga City Charter, 9,386.5 signators would be required to equal at least fifty percent (50%) of the entire vote for all candidates of mayor at the last preceding general municipal election. . . .

[4]Section 3.18 of the City Charter requires the petition "contain a general statement of the grounds for which the removal is sought." Tenn. Code Ann. § 6-53-108 – Petitions for recall elections – states as follows:

> (a) The charter of any municipality to the contrary notwithstanding, any petition or petitions required to be filed under a municipal charter in order to cause a recall election of whatever type or kind, whether in the nature of a new municipal election prior to the next regular election or otherwise, shall contain one (1) or more specific grounds for removal.

> (b) This section shall be construed to be remedial and shall be given a liberal and retroactive effect where legally permissible.

The Mayor further noted that several different versions of the recall petition were circulated, each differing from the petition originally approved for circulation by the Election Commission. According to the Mayor, each of these varying, non-approved petitions failed to comply with state law. All of the versions of the petition failed to set forth any question, and the unapproved versions omitted spaces where the date each person signed could be identified.

Lastly, the Mayor argued that the decision by the Election Commission to schedule any recall election for the general election to be held on November 2, 2010, plainly violated Tenn. Code Ann. § 2-5-151(f)(2), which requires that such an election be held during the next "general municipal or county election."[5]

On September 1, 2010, Mr. James Folkner ("the Intervenor"), the leader of the effort to recall the Mayor, filed a motion seeking both permissive intervention pursuant to Tenn. R. Civ. P. 24.02 and intervention as of right pursuant to Tenn. R. Civ. P. 24.01. In so doing, the Intervenor denied that the circuit court had jurisdiction over the case, and he requested that the case be transferred to chancery court. He cited two reasons: (1) the Mayor requested equitable injunctive relief in addition to his requests for declaratory relief; and (2) the Intervenor himself, though not then a party to this action, sought equitable relief in the form of estoppel against the Election Commission. The Mayor opposed the motion to intervene and the motion to transfer. After conducting a hearing, the circuit court granted the Intervenor's motion to intervene and allowed him to participate as a party defendant. However, it denied the Intervenor's motion to transfer the case to chancery court. The court held that it would not hear evidence, or consider proof, regarding whether the Election Commission should be estopped from invalidating any signature affixed to the recall petition based upon the lack of a date beside such signatures.

On September 7, 2010, the circuit court held a hearing on the merits of the Mayor's complaint. Prior to the hearing, the Election Commission had never addressed the issue of whether undated signatures would be counted. Counsel for the Election Commission addressed the trial court as follows:

> MR. CLEM: . . . [T]he Election Commission has been charged by the State to basically run these elections and set up these elections.

_____

[5]The parties stipulated during the hearing that the next election scheduled for county offices held under the authority of state law, Tenn. Code Ann. §§ 2-3-202 and 2-1-101(25), is to be held on August 2, 2012. Similarly, the next election scheduled under the authority of Section 5.3 of the City Charter is to be held on March 5, 2013.

* * *

So they did accept the petition, meaning the unsigned petition, the format, on the June 16th hearing and they indicated what the process would be to move forward.  However, **the decision actually to accept whether or not these petitions have qualified will not be done until tomorrow morning**, at least without intervention of this Court.

* * *

**. . . [I]t's important to note that a lot of the facts that we're discussing today were not present at the last Election Commission.**

**All the issues as to dates, for instance, on signatures, that has not been discussed by the Election Commission.  They have not deliberated on that point.  We don't know which way they would rule tomorrow morning on that point.**

* * *

THE COURT:  Let me interrupt you for just a second.  So in regard to the presumption that may or may not be according to the decisions of the Election Commission, it's your representation that the Election Commission has not yet made a final decision on this issue; is that right?

MR. CLEM:  Correct, Your Honor.  They have not.  I believe they have -- well, I think they could overturn any decision they made in June or July, but having said that, they have made a decision to accept the lower number.  They made a decision to go with the two-step process and to set it on November's ballot, but all that is contingent upon whether or not they certify this re-call petition which is set for tomorrow morning.  They have not done that and quite a few facts have come up.

And the Election Commission has not met privately.  They have not discussed this.  I've talked to individual Election Commissioners and I am not sure which way they would rule tomorrow morning on that issue.

So if the Court believes that the Election Commission does have a presumption of correctness, then I would ask the Court to defer to them. However, if that's not the case, it seems to me we're just delaying the obvious. . . .

(Emphasis added).

## II. TRIAL COURT'S RULING

At the conclusion of the hearing, the trial court announced as follows from the bench:

[T]his is a declaratory judgment action deciding the rights and the obligations of the parties under the law. And the Tennessee Code Annotated Section 2-5-151, I'll refer to as the State statute or the statute, whether that applied to this situation or whether Section 3.18 of the City Charter applied or, a third possibility, whether the State statute applied to some aspects of this and the provision in the Charter to others.

It is the finding of this Court . . . that the State statute, that is, Tennessee Code Annotated 2-5-151, controls all aspects of this proceeding.

My reasons for finding that are that when that statute was passed in July of 1997 or at least enacted in July of 1997, it provided a uniform method by which . . . elected officials such as Mr. Littlefield could be recalled. And under . . . the Home Rule provisions of the State constitution, municipalities are allowed to . . . pass ordinances and pass laws that govern their own affairs as long as those do not conflict or contradict State law.

In the State statute the legislature said that if a municipality wants to change the number of signatures that are required for a re-call effort and if it wants to change the number of days within which those signatures have to be accumulated, they are free to do so as long as that is enacted after 1997, July 1st of 1997.

And it is the finding of this Court that the City of Chattanooga did not enact Section 3.18 after July of 1997. That ordinance was enacted initially in 1990. Stayed in effect until and through the passage of the State statute in 1997.

In 2002 the City did engage in a procedure by which it amended the City Charter and included in that amendment was Section 3.18 in that the reference to the board of education, which was no longer in existence, was taken out of

-7-

that ordinance, but that is an amendment and that is not an enactment.

* * *

. . . Tennessee Code Annotated 2-5-151 requires that such signatures on the petitions for re-call be dated.

. . . [T]he petitions submitted for the re-call for Ron Littlefield as Mayor of the City of Chattanooga are invalid because they do not contain the valid signatures required by Tennessee Code Annotated 2-5-151.

. . . [E]ven if Section 3.18 of the City Charter controlled the number of signatures required for the re-call question, the petitions would still be invalid because there are not enough dated signatures as required by T.C.A. --- T.C.A. § 2-5-151 to meet that requirement.

. . . [T]he Hamilton County Election Commission is not authorized under law to certify the petitions for re-call.

. . . [T]he Hamilton County Election Commission is not authorized by law to add the re-call of Ron Littlefield as Mayor of the City of Chattanooga to the November 2, 2010, ballot.

An injunction is going to issue. The injunction will enjoin the Hamilton County Election Commission from certifying the petitions that have been submitted to it for the re-call of Ron Littlefield as Mayor of the City of Chattanooga.

The Hamilton County Election Commission will also be enjoined from placing this question on the November 2, 2010, ballot.

The trial court's written memorandum order clarified and reiterated its ruling from the bench:

Mr. Littlefield contends the election commission is not authorized to certify the recall petitions or schedule an election for mayor, because the petitions submitted do not comply with T.C.A. § 2-5-151 ("the State Statute"). The Election Commission and Mr. Folkner contend that 3.18 of the Charter ("the Ordinance") governs this situation and that the petitions complied with the

-8-

Ordinance. The first issue to be decided is whether the recall effort is governed by the State Statute or the Ordinance. The Ordinance, which authorizes the recall of elected officials in Chattanooga, was enacted in 1990. The Ordinance states that, in order to affect a recall, petitioners must obtain the signatures of enough voters registered in the City to equal 50% of the number of person[s] who voted in the most recent mayoral election. It was stipulated that in this case, the Election Commission found that petitioners had submitted enough valid signatures to comply with the Ordinance. It was also stipulated that the State Stature requires the signatures of 15% of the registered voters in the City of Chattanooga. That number is 14,854.

From its passage in 1990 until July 1, 1997, the Ordinance would have governed the recall of any elected official in the City. On July 1, 1997, the State Statute went into effect. The State Statute states that "any governmental entity having a charter position for recall, referendum or initiative or any person acting pursuant to such charter shall meet the requirements of this section" The State Statute did not create a right to recall elected officials, but rather imposed a uniform procedure for such actions created by local laws. In enacting the State Statute, the Tennessee Legislature supplanted any procedures contained in any recall provisions of a municipality's charter, including the Charter of the City of Chattanooga. T.C.A. § 2-5-151(b) states that "petitions shall be signed by at least fifteen percent (15%) of those registered to vote in the municipality or county." As noted previously, 15% of the registered voters in the City of Chattanooga equal 14,854 signatures. T.C.A. § 2-5-151(e) states that "upon filing, each completed petition shall contain the following:

     1. The full text of the question attached to each petition;

     2. The genuine signature and address of registered voters only, pursuant to the requirements of T.C.A. § 2-1-107;

     3. The printed name of each signature; and

     4. The date of signature."

T.C.A. § 2-5-151(j) provides as follows:

     "This section shall control notwithstanding any statutory provision or charter provision of a municipality or county to the

contrary; provided, that any contrary charter provision of a municipality or county which is enacted after July 1, 1997, shall control with respect only to the requirements set forth in subsection (d) relating to the statutory minimum number of signatures required in a petition and to the provisions of subdivision (f)(1) and relating to the 75 day deadline for filing of a petition after final certification by the county election commission." (emphasis added)

Therefore, under the provisions of subsection (j), the City had the right to choose a different number of signatures than the 15% of the registered voters required by the Statute. However, the City would need to take action to change that requirement after July 1, 1997. The City did not have the right to change the requirements of subsection (e), including the requirement that each signature be dated.

The petitioners and the Election Commission contend that the City "enacted" a new ordinance relating to recalls in 2002. In 2002, the City proposed Ordinance 11272 which amended certain provision of the City's Charter, including an amendment to 3.18, the ordinance applicable to this case. Ordinance 11272 did not enact the City Charter. In fact, it merely amended certain language which related to Chattanooga's old form of government. The amendment to 3.18 of the Charter was to remove any reference to the City's Department of Education which was no longer in existence in 2002. It cannot be said that the passage of Ordinance 11272 was an enactment of 3.18 or any other provision of the Charter. It was merely an amendment of that document. Therefore, the provisions of the State Statute continue to govern all aspects of any recall effort, including the one at issue in this case.

## III. TRIAL COURT'S RULING ON POST-JUDGMENT MOTION

The Intervenor subsequently filed a motion for relief from the final judgment alleging two grounds: (1) that the trial court lacked subject matter jurisdiction over this action; and (2) that the Mayor lacked standing to challenge the certification of the petition seeking his recall from office.[6]

In its order denying the Intervenor's motion for relief, the trial court addressed the

---

[6]No issues concerning standing have been raised in this appeal.

-10-

jurisdiction issue as follows:

> Mr. Folkner cites several Tennessee Supreme Court cases for the proposition that, acting as a court of equity, this Court had no jurisdiction to enjoin or otherwise intervene in the election. While those decisions recognize that courts should be very reluctant to interfere with the electoral process, they also recognize that there may be times in which the law requires intervention. In *Hammond v. Wimberly*, 196 SW2d 561 (Tenn. 1946), the complainants asked the court to enjoin certification of recall petitions complainants said had not been properly reviewed and vetted by the election commission. The Chancellor in that case refused to issue an injunction and the Supreme Court upheld that decision, citing the earlier case of *Buena Vista Special School District v. Board of Election Commissions of Carroll County*, 116 SW2d 1008 (Tenn. 1938). Mr. Folkner's motion does not address the language cited in the *Buena Vista* decision which says that "under special circumstances, courts of equity have sometimes enjoined the holding of an election, but such circumstances do not exist here." However, unlike *Buena Vista*, special circumstances do exist in this case. At the hearing on September 7, 2010, the parties stipulated several facts including that the petitions submitted for the recall of Mayor Littlefield did not contain a sufficient number of signatures to comply with the requirements of T.C.A. § 2-5-151. The Court, for reasons set out in the September 8 Order, declared § 2-5-151 dictated the requirements to be met in this recall effort. The undisputed fact that the recall petitions did not have required signatories was a special circumstance. The petitions did not comply with the law. In another Supreme Court case cited in Mr. Folkner's brief, the court cited with approval the following language, "In general, in the absence of some special reason, such as the holding of an election without apparent authority of law, on questions affecting person or property rights and involving the expenditure of funds other than the cost of the election, the courts have declared that they have no power to enjoin the holding of an election." *See O'Neil v. Jones*, 206 S.W.2d 782, 785 (Tenn. 1947). While enjoining an election should be extremely rare and not taken lightly, this case presented a situation in which allowing the recall question to be placed on the November 2, 2010 ballot would be the sanctioning of an election which did not have the apparent authority of law. Therefore, the injunction will remain in place.

* * *

. . . [T]his Court had jurisdiction to issue the declaratory judgment and the

-11-

injunction. . . .

Subsequent to this order, the Intervenor filed a timely appeal.

## IV. ISSUES

The Intervenor has presented us the issue of whether the Tennessee Supreme Court has allowed that a trial court can enjoin an election. Upon copious review of the record before us, we believe the issue presented by this matter is whether the trial court had jurisdiction to enjoin the election commission *at this stage* of these proceedings.

## V. DISCUSSION

In *City of Memphis v. Shelby County Election Comm'n*, 146 S.W.3d 531 (Tenn. 2004), the Supreme Court observed:

> The trial court in this case accurately characterized the Commission's duties as ministerial. The Commission and the [State Election] Coordinator respectively perform important functions vital to the maintenance and advancement of our political system. . . .
>
> * * *
>
> . . . [T]he Commission and the Coordinator have certain statutorily prescribed ministerial duties that allow – indeed require – them to do such things as examine ballot initiatives to determine whether signature requirements are met, determine whether submissions are timely, and determine whether candidates have properly qualified to be placed on the ballot. *See* Tenn. Code Ann. 2-1-101 through -216 (2003) et seq. . . . *See* Tenn. Code Ann. 2-12-101 through 2-12-216 (delineating the duties of the Commission). **The Commission contends that it has the power and duty to make an "initial determination" whether the law authorizes the acts it is required to perform. This contention is true with respect to the Commission's performance of its ministerial duties.** . . .

*Id.* at 535-536 (emphasis added). We find that the language quoted supports a finding that the Election Commission was entitled to make a final determination regarding the issues surrounding the recall ballot prior to judicial review. Comporting with our view, Tenn. Code

-12-

Ann. § 27-9-101 provides that "[a]nyone who may be aggrieved by any *final* order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts . . . ." (Emphasis added).

In the matter before us, the Election Commission was preempted by the trial court's injunction from meeting and engaging in the "statutorily prescribed ministerial duties" required of it to make final decisions regarding the recall ballot. As we noted previously, counsel for the Election Commission addressed the trial court as follows:

> MR. CLEM: . . . **[T]he decision actually to accept whether or not these petitions have qualified will not be done until tomorrow morning . . . .**
>
> * * *
>
> . . . **[I]t's important to note that a lot of the facts that we're discussing today were not present at the last Election Commission.**
>
> **All the issues as to dates, for instance, on signatures, that has not been discussed by the Election Commission. They have not deliberated on that point. We don't know which way they would rule tomorrow morning on that point.**
>
> * * *
>
> THE COURT: Let me interrupt you for just a second. So in regard to the presumption that may or may not be according to the decisions of the Election Commission, it's your representation that the Election Commission has not yet made a final decision on this issue; is that right?
>
> MR. CLEM: Correct, Your Honor. They have not. . . .

(Emphasis added). Despite receiving this information, the trial court rendered a ruling without allowing the Election Commission to formally decide whether or not to certify the recall petition.

## VI. CONCLUSION

The issues the trial court addressed were not final determinations of the Election Commission. Thus, the trial court lacked jurisdiction. A judgment entered without jurisdiction is void; accordingly, we must vacate the judgment and dismiss the complaint.

-13-

*Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 424 (Tenn. Ct. App. 2007). We pretermit consideration of the additional issues raised. Costs of this appeal are taxed to the appellee, Ron Littlefield. This cause is remanded, pursuant to applicable law, for the collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE