# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

## THE CITY OF MEMPHIS v. SHELBY COUNTY ELECTION COMMISSION, ET AL.

### Appeal from the Chancery Court of Shelby County
### No. CH-04-1736-II     Arnold B. Goldin, Judge

---

### No. W2004-02182-SC-RDM-CV - Filed September 15, 2004

---

In this expedited appeal, this Court is asked to decide whether the Shelby County Election Commission exceeded its authority by refusing to place Referendum Ordinance No. 5072 on the November 2, 2004, ballot based upon the State Election Coordinator's opinion that the Ordinance is unconstitutional. We hold that the Shelby County Election Commission exceeded its authority in refusing to place the measure on the ballot. Accordingly, the judgment of the trial court is reversed, and the Commission is hereby ordered to include Referendum Ordinance No. 5072 on the November 2, 2004, ballot.

### Tenn. Code Ann. § 16-3-201; Judgment of the Trial Court Reversed

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Allan J. Wade, Lori Hackleman Patterson, Brandy S. Parrish, Sara L. Hall, Memphis, Tennessee, for the appellant, The City of Memphis.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Ann Louise Vix, Senior Counsel, Charles L. Lewis, Deputy Attorney General, Nashville, Tennessee, for the appellee, Shelby County Election Commission, Gregory M. Duckett, Richard J. Holden and Maura Black Sullivan, Members.

### OPINION

## I. Motion to Assume Jurisdiction

On September 10, 2004, the City of Memphis ("City") filed a motion pursuant to Tennessee Code Annotated section 16-3-201 requesting that this Court assume jurisdiction of this appeal and render an expedited decision. The City asserted that this is a case of unusual public importance involving constitutional separation of powers issues. The City maintained that expediting the appeal is necessary to enable the Shelby County Election Commission to prepare and to distribute to military personnel by September 18, 2004, the ballots for the November 2, 2004, general election. This Court immediately ordered the parties to submit briefs addressing the following issues: (1) whether the Shelby County Election Commission and Commission Members ("Commission") had the authority to refuse to place Referendum Ordinance No. 5072 on the November 2, 2004, ballot because they believed it to be unconstitutional; and (2) whether Referendum Ordinance No. 5072 is unconstitutional.

Upon due consideration of the well-written and thorough briefs, prepared on short notice,[1] this Court finds that the City's motion is well taken. We agree with the City that this is a case of unusual public importance, presenting a special need for expedited decision and involving issues of constitutional law. See Tenn. Code Ann. § 16-3-201 (Supp. 2003). Accordingly, we hereby grant the City's motion, assume jurisdiction of this appeal, and, as explained below, reverse the judgment of the trial court.

## II. Factual and Procedural Background

Petitioner, the City, is a home rule municipality duly chartered under Article XI, section 9 of the Tennessee Constitution. The Commission is responsible for administering public elections in Shelby County and in the City. On August 17, 2004, the Memphis City Council passed on third and final reading Referendum Ordinance No. 5072. If approved by the voters, this measure would amend the City's Charter by adding the following provision:

> The Council of the City of Memphis is authorized by Ordinance to authorize the City of Memphis to levy and collect an additional privilege tax and/or fee on the privilege of engaging in certain vocations, occupations, callings and employment related activities within the City and to authorize the use of revenue derived therefrom for budget expenditures for fire, police and for corresponding reductions of ad valorem taxes for expenditures made from such revenues.

The City's Comptroller delivered to the Commission a copy of Referendum Ordinance No. 5072, along with a suggested referendum question (collectively "Ordinance"), for inclusion on the November 2, 2004, ballot. There is apparently no dispute that the Ordinance was duly enacted by the Memphis City Council, signed by the Mayor, and properly and timely submitted to the Commission for inclusion on the ballot. However, on August 26, 2004, the Commission refused

---

[1]This Court's Order of Friday, September 10, 2004, allowed the City until Monday, September 13, 2004, and the Commission until Tuesday, September 14, 2004, in which to brief this cause.

to place the Ordinance on the ballot. In doing so, the Commission relied upon an August 25, 2004, letter from Brook Thompson, Tennessee Coordinator of Elections ("Coordinator"). In this letter, the Coordinator declared that he would not approve any ballot containing the Ordinance and stated that a privilege/payroll tax, to which the Ordinance ultimately speaks, "is unconstitutional unless and until the General Assembly authorizes cities to impose such a tax."

On August 27, 2004, the City filed a "petition for writ of mandamus, for injunctive relief, and for a declaratory judgment," challenging the Commission's refusal to place the Ordinance on the ballot. A hearing was held on September 7, 2004, before Chancellor Arnold Goldin. Although characterizing the duties of the Commission and the Coordinator as ministerial in nature, the Chancellor concluded that these officials had the authority to refuse to place the Ordinance on the ballot. The Chancellor further found that the Ordinance would be unconstitutional because it would unlawfully increase the taxing power of the City in violation of Article XI, section 9 of the Tennessee Constitution.[2] The City filed a notice of appeal on September 8, 2004, and, two days later, filed a motion asking this Court to assume jurisdiction of the appeal pursuant to Tennessee Code Annotated section 16-3-201. We granted the City's motion.

### III.  Authority of the Commission

The City argues that the Commission and the Coordinator are ministerial officials who had no authority to refuse to place the Ordinance on the ballot because they believed it to be unconstitutional. In support of its argument, the City points to several statutes, discussed hereinafter, delineating the duties of the Commission, as well as to several statutes setting forth the duties of the Coordinator whose opinion the Commission relied upon in refusing to place the Ordinance on the ballot. The Commission responds that it has the duty to review proposed referendum measures and to determine initially whether such measures comply  with state statutes and with the state constitution.

The City correctly points out that the Coordinator  and the Commission are ministerial officers. Shelby County Election Comm'n v. Turner, 755 S.W.2d 774, 776 (Tenn. 1988) ("[T]he Election Commission has only ministerial duties."); Peeler v. State ex rel. Beaseley, 231 S.W.2d 321, 323 (Tenn. 1950) (holding that the duties of county election commissions are ministerial); Curtis v. State, 43 S.W.2d 391 (Tenn. 1931); Taylor v. Carr, 141 S. W. 745, 750 (Tenn. 1911) (holding that "the duties of commissioners of election are only ministerial"); see State ex rel. Tidwell v. Morrison, 274 S. W. 551, 552 (Tenn. 1924). The trial court in this case accurately characterized the Commission's duties as ministerial. The Commission and the Coordinator respectively perform important functions vital to the maintenance and advancement of our political system. Nonetheless, as ministerial officers, the Commission and the Coordinator have limited discretion.

Black's Law Dictionary defines a "ministerial officer" as "[o]ne who performs specified legal

---

[2]Article XI, section 9 of Tennessee's Constitution declares that although home rule municipalities, such as the City, have broad powers to amend their charters by referendum, "the power of taxation of such municipality shall not be enlarged or increased except by general act of the General Assembly."

duties when the appropriate conditions have been met, but who does not exercise personal judgment or discretion in performing those duties." Black's Law Dictionary 1113 (7th ed. 1999). A "strictly ministerial duty" is defined as: "A duty that is absolute and imperative, requiring neither the exercise of official discretion nor judgment." Id. at 522.[3] These definitions illustrate how, as ministerial officers performing ministerial acts, the Commission and the Coordinator must implement the election laws, not determine the substantive constitutionality of ballot measures.

Without question, the Commission and the Coordinator have certain statutorily prescribed ministerial duties that allow – indeed require – them to do such things as examine ballot initiatives to determine whether signature requirements are met, determine whether submissions are timely, and determine whether candidates have properly qualified to be placed on the ballot. See Tenn. Code Ann. § 2-1-101 through -216 (2003) et seq. However, these statutes do not require or even permit the Commission to refuse to include a referendum question on the ballot because the Commission believes the question to be substantively unconstitutional. See Tenn. Code Ann. §§ 2-12-101 through 2-12-216 (delineating the duties of the Commission). The Commission contends that it has the power and duty to make an "initial determination" whether the law authorizes the acts it is required to perform. This contention is true with respect to the Commission's performance of its ministerial duties. However, it is inaccurate to say that the Commission has the power and duty to perform an initial or cursory review of the substantive constitutionality of measures to be placed on the ballot for referendum. Determining the substantive constitutionality of such measures is a function reserved for the judicial branch of government.

Furthermore, the Coordinator, an appointed, ministerial official, also lacks the statutory authority to forbid the inclusion of a referendum question based upon the Coordinator's opinion that the measure is substantively unconstitutional. The Coordinator's statutory duty to approve the "form of the ballot" does not provide authority to determine the substantive constitutionality of referendum questions, like the Ordinance at issue in this case. The "forms of ballots on voting machines" and the "form of paper ballots" are prescribed by statute. See Tenn. Code Ann. §§ 2-5-206, -207. These statutes describe the proper "form" of the ballot in detail, including, for example, the color of ink and the proper placement of certain titles and candidate names. See id. at §§ -206, -207 However, these statutes do not address the substance of ballot measures.

Finally, Tennessee Code Annotated section 2-11-202 does not provide the Coordinator with authority to exclude the Ordinance based upon the Coordinator's opinion that the Ordinance is substantively unconstitutional. Section 2-11-202 provides in relevant part as follows:

> (a) The coordinator of elections shall:
>> (1) Generally supervise all elections;

---

[3]The City cites a prior edition of Black's Law Dictionary which defines ministerial official as "[o]ne whose duties are purely ministerial, as distinguished from executive, legislative, or judicial functions, requiring obedience to the mandates of superiors and not involving the exercise of judgment or discretion." Black's Law Dictionary 996 (6th ed. 1990). That same edition defines a "ministerial act" as "[t]hat which is done under the authority of a superior . . . . That which involves obedience to instructions, but demands no special discretion, judgment, or skill." Id.

> (2) Prepare instructions for the conduct of registration;
> (3) Advise election commissions, primary boards, and
> administrators of elections as to the proper methods of
> performing their duties;
> (4) Authoritatively interpret the election laws for all
> persons administering them; . . . .

Tenn. Code Ann. § 2-11-202 (2003). Although the Coordinator must "authoritatively interpret the election laws for all persons administering them," this statute does not permit or instruct the Coordinator to provide an authoritative interpretation as to whether a municipal ordinance placing a question on the ballot violates the Tennessee Constitution.[4]

Indeed, any statute purporting to grant the Coordinator or the Commission such broad interpretive authority would run afoul of the principle of separation of powers embodied in the Tennessee Constitution, Article II, sections 1 and 2.[5] This Court has explained:

> The powers of government, divided into the legislative, executive,
> and judicial branches, are separate and divisible. The legislative
> branch has the authority to make, alter, and repeal the law; the
> executive branch administers and enforces the law; and the judicial
> branch has the authority to interpret and apply the law. Since the
> United States Supreme Court decision in Marbury v. Madison, it has
> been the sole obligation of the judiciary to interpret the law and

_____

[4]In his August 25, 2004, letter, the Coordinator stated that he would "not approve any ballot" that contained the Ordinance. The City correctly points out that, although County Election Commissions must submit for the Coordinator's approval a sample ballot of "candidates" for public offices, the plain language of Tennessee Code Annotated sections 2-5-206(c) and 2-5-207(e) does not appear to require County Election Commissions to submit for the Coordinator's approval a sample ballot of referendum questions. See Tenn. Code Ann. § 2-5-206(c) (providing that the election commission "shall prepare a sample ballot of all candidates and mail this sample ballot to the coordinator of elections for approval"); Tenn. Code Ann. § 2-5-207(e) (providing that the election commission "shall prepare a sample ballot of all candidates listed in § 2-13-202 and shall mail this sample ballot to the coordinator of elections for approval"). The Commission disputes the City's assertion and points out that sections -206(c) and -207(e) clearly state that "[n]o ballot shall be printed or funds expended therefor by any county until [the Coordinator's] approval has been granted." Nonetheless, this statute does not define which portions of the ballot the Coordinator must approve prior to printing. As the City asserts, the plain language of the statute appears to require Coordinator "approval" of the sample ballot for "candidates" rather than for referendum questions. Regardless, we need not decide the scope of the Coordinator's approval authority in this appeal.

[5]Article II, section 1 provides: "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Furthermore, Tennessee Article II, section 2 states: "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tenn. Const. art. II, §§ 1, 2.

> determine the constitutionality of actions taken by the other two branches of government. The Tennessee Constitution [Art. II, § 2] forbids an encroachment by one department upon the powers or functions of another. <u>Thus, a legislative action vesting executive branch agencies with the authority to determine the constitutionality of statutes would violate the separation of powers doctrine.</u>

<u>Richardson v. Tennessee Bd. of Dentistry</u>, 913 S.W.2d 446, 453 (Tenn. 1995) (internal citations omitted) (emphasis added).

Reduced to its essence, the City's assertion is that, regardless of whether the Ordinance unconstitutionally enlarges the City's taxing power, the Commission and the Coordinator clearly violated this constitutional doctrine of separation of powers. The City maintains that the Commission and the Coordinator usurped the judiciary's authority to determine the constitutionality of laws, including municipal ordinances, and encroached upon the Memphis City Council's legislative authority to enact and submit laws to the electorate. The Commission asserts that it had the authority – indeed the duty – to review the Ordinance to determine whether it violated Article XI, section 9 by enlarging the City's taxing authority.

After carefully considering these arguments, we agree with the City that the Coordinator and the Commission violated the constitutional principle of separation of powers by refusing to place the Ordinance on the ballot. With regard to referendum charter amendment ordinances, like the Ordinance at issue in this case, Article XI, section 9 of the Tennessee Constitution clearly states:

> It shall be the duty of the legislative body of such municipality to publish any proposal so made and to submit the same to its qualified voters at the first general state election which shall be held at least sixty (60) days after such publication and such proposal shall become effective sixty (60) days after approval by a majority of the qualified voters thereon.

By refusing to include the Ordinance, the Coordinator and the Commission thwarted the Memphis City Council's constitutional duty to submit the Ordinance to the qualified voters at the first general state election.

Furthermore, the Coordinator and the Commission usurped the power of the judiciary to determine the substantive constitutionality of duly enacted laws. We have found no Tennessee authority, and none has been cited to us, wherein executive or legislative branch officials are permitted to determine the substantive constitutionality of duly enacted, presumptively valid ordinances. <u>Cf.</u> <u>Kirk v. Olgiati</u>, 308 S.W.2d 471, 473 (Tenn. 1957) ("[T]he necessity and advisability of a City ordinance is for the legislative power to determine and the presumption is that said ordinance is valid and constitutional.") Indeed, as previously explained, ministerial officials are prohibited from exercising this uniquely judicial function. This Court has emphasized that:

[t]he general public welfare, and more especially the peace and good order of society, will not admit of ministerial officers being the judge of the constitutionality of statutes and ordinances. Their failure and refusal to enforce the law as written, in the absence of any proper adjudication of unconstitutionality, would be intolerable.

Bricker v. Sims, 259 S.W.2d 661, 664-65 (Tenn. 1953). Here, ministerial officials adjudged the substantive constitutionality of a duly enacted Ordinance and, based on their judgment, forbade its inclusion on the ballot. We agree with the City that, in doing so, the Coordinator and the Commission overstepped their statutory and constitutional authority.[6] Accordingly, the trial court's decision on this issue is reversed.

## IV. Constitutionality of the Ordinance

The Commission asserts that the Ordinance is unconstitutional because it "clearly, plainly, and on its face would expand Memphis' power of taxation." The Commission asks this Court not to require it to place the purportedly invalid Ordinance on the ballot. In so arguing, the Commission relies upon this Court's decision in Brown v. State ex rel. Jubilee Shops, Inc., 426 S.W.2d 192 (Tenn. 1968), in which this Court reviewed the constitutional challenge to an ordinance before ordering the County Election Commission to place it on a referendum ballot.

The City asserts that the constitutionality of the Ordinance is not ripe for judicial determination. The City maintains that the Commission's reliance upon Brown is misplaced because Brown involved a constitutional challenge to the form of the referendum ordinance whereas, in this case, the Commission challenges the substantive constitutionality of the Ordinance.

Upon due consideration, we agree with the City that a challenge to the substantive constitutional validity of the Ordinance is not ripe for judicial determination. The City's voters may or may not approve the Ordinance. If the Ordinance is approved, the City may or may not adopt a privilege tax to which the Ordinance speaks. The City may or may not seek approval by the General Assembly for such a tax, and the General Assembly may or may not approve any such request. In short, we decline to pass upon the constitutionality of a measure that is not now the law and may never become the law. For us to do so at this premature stage would violate the established rule that appellate courts will not render advisory opinions, Leach v. State, 491 S.W.2d 81, 82 (Tenn. 1973); Banks v. Jenkins, 449 S.W.2d 712, 717 (Tenn. 1969), and will not decide theoretical issues based on contingencies that may or may not arise. Dorothan v. McMinn County, 213 S.W.2d 173, 178 (Tenn. 1948); United States Fidelity & Guaranty Co. v. Askew, 191 S.W.2d 533, 534 (Tenn. 1946).

Furthermore, we agree with the City that Brown is distinguishable and not controlling. In

---

[6]We realize that the Commission relied upon the advice of the Coordinator, who had relied upon a 1993 Attorney General's Opinion which had concluded that the City lacked the authority to assess and to enforce a proposed "Occupational Privilege Tax," stating in relevant part that "the privilege it purports to tax has not been declared or defined by state law, and . . . no general authority has been delegated to cities to levy such a tax." Tenn. Op. Atty. Gen. No. 93-48. Of course, Attorney General Opinions are not "adjudications." Bricker, 259 S.W.2d at 665.

that case, the constitutional challenge was to the form of the ordinance, not to its substance. The body of the ordinance was alleged to be broader than its caption in violation of Article II, section 17 of the Tennessee Constitution. Thus, given the challenge to the form of the ordinance, we agreed that mandamus should not issue until and unless the ordinance was determined to be valid. Brown, 426 S.W.2d at 287. However, Brown did not present the hypothetical, unripe question of whether the ordinance, if passed, would be unconstitutional. Rather, Brown presented the concrete and ripe question of whether the ordinance had been passed in the form necessary to legitimately invoke the referendum process. Generally, pre-election challenges to the substantive constitutional validity of referendum measures are not ripe for determination by a court, while pre-election challenges to the form or facial constitutional validity of referendum measures are ripe for judicial scrutiny.[7] See James D. Gordon III & David B. Magleby, Pre-Election Judicial Review of Initiatives and Referendums, 64 Notre Dame L. Rev. 298, 314 (1989); see also Donovan v. Priest, 931 S.W.2d 119, 122 (Ark. 1996); Burnell v. City of Morgantown, 558 S.E.2d 306, 313-14 (W. Va. 2001) (explaining and applying this rule). The authority from other jurisdictions upon which the Commission relies involved pre-election challenges to the form or facial constitutional validity of referendum measures, rather than pre-election challenges to the substantive constitutional validity of such measures. See Alaska Conservative Political Action Comm. v. Municipality of Anchorage, 745 P.2d 936, 938 (Alaska 1987) (refusing to require election officials to place on the ballot an initiative that on its face sought to make an appropriation because the Alaska constitution specifically prohibited making appropriations by initiative); Missourians to Protect the Initiative Process v. Blunt, 799 S.W.2d 824, 827 (Mo. 1990) (en banc) (considering, in a pre-election challenge, whether a ballot measure violated a state law requiring that an initiative petition contain no more than one subject and stating that "[o]ur single function is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded"); State ex rel. Hazelwood Yellow Ribbon Comm. v. Klos, 35 S.W.3d 457, 468 (Mo. Ct. App. 2000) (stating that "modern precedents leave no doubt that Missouri courts indeed recognize and follow a general rule against pre-election judicial review concerning the substantive legality of ballot measures"); State ex rel. Childress v. Anderson, 865 S.W.2d 384, 390-91 (Mo. Ct. App. 1993) (holding a ballot zoning measure invalid because it had not been submitted to the city planning and zoning commission for examination and recommendation prior to consideration by the city council, as required by the city charter); State ex rel. Brant v. Beermann, 350 N.W.2d 18, 21 (Neb. 1984) (stating that "[u]nless the subject of the proposed petition on its face is invalid or unconstitutional, the Secretary of State cannot pass upon the validity or construction of any proposed law . . ." and that "[t]he Secretary of State is required to perform promptly all the ministerial duties imposed by law, except the Secretary of State may determine whether the subject of the petition has the semblance of a law or whether the subject is legally appropriate for the initiative"); Town of Hilton Head Island v. Coalition of Expressway Opponents, 415 S.E.2d 801, 806 (S.C. 1992) (refusing, in a pre-election declaratory judgment action brought by the town and various taxpayers, to require the town to place

---

[7]The caution and restraint which courts typically exercise in reviewing pre-election challenges to the substantive constitutionality of referendum measures further supports this Court's holding that the Commission, a non-judicial, ministerial body, lacked the authority to undertake a initial determination of the substantive constitutionality of the Ordinance.

a facially unconstitutional measure on the referendum ballot); <u>Dixon v. Provo City Council</u>, 363 P.2d 1115, 1116 (Utah 1961) (refusing to compel election authorities to place the ordinance on the ballot because the proposal which called for the election of "three commissioners and an auditor" was facially invalid in light of a generally applicable state statute vesting the authority of municipal government "'in a board of commissioners, consisting of a mayor and two commissioners, to be elected at large'").

Regardless of its assertions to the contrary, the Commission's challenge is to the substantive constitutional validity of the Ordinance, rather than merely to the facial or procedural legality of the measure. This challenge is unlike the challenge in <u>Brown</u> which required this Court merely to review the ordinance to determine if its body was broader than its caption in violation of Article II, section 17 of the Tennessee Constitution. Deciding the constitutional challenge in this case would require not only review of the City's existing charter to determine how broad the City's taxing powers are at present, but also review of the Ordinance to determine whether it would, upon adoption, actually enlarge or increase the City's taxing powers in violation of Article XI, section 9.[8] In short, the challenge in this case strikes at the substantive constitutional validity of the Ordinance. Thus, as previously stated, this pre-election challenge simply is not ripe for judicial determination.

### V. Conclusion

As explained herein, the City's motion requesting that this Court assume jurisdiction of the appeal is well taken and is granted. We hold that the Commission exceeded its statutory and constitutional authority by excluding the Ordinance from the November 2, 2004, ballot. Therefore, the Commission is hereby ordered to include the Ordinance on the November 2, 2004, ballot. The substantive constitutionality of the Ordinance, or any law that may eventually result from the measure, is not now an issue ripe for judicial determination. This opinion is not subject to rehearing under Tennessee Rule of Appellate Procedure 39, and the Clerk is directed to certify this opinion as final and to immediately issue the mandate. Costs of this appeal are taxed to the Commission for which execution may issue if necessary.

FOR THE COURT:

---

[8]As to taxing power, Section 756 of the City's existing charter provides broadly:

> The power conferred thus to impose taxes shall apply to every object and subject of taxation within the corporate limits of the city of Memphis. Said power shall extend to every species of property and to privileges and wharfage dues, and all other things upon which the legislature or the city has heretofore laid taxes, rates, or assessments for the support and maintenance of said government, the object being to provide for the exercise of the power herein conferred under the restrictions named as fully as the same could be exercised if the legislature and not the city were exercising the power.

-9-

_____

FRANK F. DROWOTA III,
CHIEF JUSTICE