# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 1, 2015 Session

## WILLIAM THOMAS McFARLAND v. MICHAEL S. PEMBERTON, ET AL.

### Appeal from the Chancery Court for Roane County
### No. 2014-105    Jon Kerry Blackwood, Judge[1]

_____

### No. E2014-02176-COA-R3-CV-FILED-NOVEMBER 16, 2015
_____

This case involves a challenge by a candidate for circuit judge to the qualifications of the winning candidate. William Thomas McFarland and Michael S. Pemberton were the only candidates in the August 7, 2014 election for Ninth Judicial District Circuit Judge.[2] In March 2014, an eligible voter in the Ninth District, who is not a party to this suit, filed a complaint with the local election commission challenging Pemberton's eligibility to run for circuit judge, alleging he did not meet the residency requirement. The local election commission held a public hearing, and ultimately determined that Pemberton was eligible. Accordingly, his name was reflected on the ballot. He won the election. McFarland, who had knowledge of the March 2014 complaint and subsequent actions by the local election commission, then filed this election challenge, seeking to void the election results on the ground that Pemberton failed to satisfy the residency requirement. The trial court dismissed McFarland's claim as an untimely review of a quasi-judicial determination under Tenn. Code Ann. § 27-9-102 (Supp. 2015). McFarland appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J. (M.S.), and JOHN W. MCCLARTY, J., joined.

William Thomas McFarland, Kingston, Tennessee, appellant, pro se.

Jennifer E. Raby, Patrick C. Cooley, and J. Polk Cooley, Kingston, Tennessee, for the appellee Michael S. Pemberton.

_____

[1] Sitting by designation.

[2] The Ninth Judicial District consists of four counties – Loudon, Meigs, Morgan, and Roane.

Herbert H. Slatery, III, Attorney General and Reporter; Andrèe Blumstein, Solicitor General; and Ryan A. Lee, Nashville, Tennessee, for the appellees, Roane County Election Commission, Lowell P. Malmquist, Vickie Watts, Ralph DePorter, Celia Simon, James Ryans, and Mark Goins, Tennessee Coordinator of Elections.

**OPINION**

I.

Pemberton filed his petition to be a candidate for circuit court judge on February 3, 2014. On March 31, 2014, Willis Hall filed a complaint with the Roane County Election Commission stating, in part, ". . . Pemberton . . . is not a resident of the district . . . and should not be on the ballot." In Tennessee, every candidate for circuit court judge is required to "have been a resident of the State for five years and of the circuit or district one year" before being elected. Tenn. Const. art. VI, § 4. During the time in question, Pemberton, though originally from Roane County, maintained a law office in Knox County, and his kindergarten-age son attended school in Knox County. He owned a 2,500 square foot home on the lake in Roane County that he and his family moved into in July 2013. Several years earlier, they purchased a 4,500 square foot home in Knox County.

In response to Hall's complaint, the Commission and the State Elections Office conducted an independent investigation to determine whether Pemberton was qualified to run. The Commission advertised and held a public hearing on the matter on April 28. Prior to this, questions regarding Pemberton's residence had been reported in several local news articles in Roane County.

In anticipation of the April 28 hearing, Hall's attorney and Pemberton each submitted materials to the Commission to substantiate their arguments, such as Pemberton's U-HAUL receipts from the move to his Roane County home, his driver license, vehicle and voter registrations, and utility bills for each home. At the hearing, which was also attended by Tennessee Coordinator of Elections, Mark Goins, the Commission afforded each side fifteen minutes to present its case, after which they invited commissioners to ask questions. Attendees were able to share their statements. Following this, the five-member Commission unanimously voted to keep Pemberton on the ballot. On the same day, the Commission certified the candidates for the ballot. The election commissions in Loudon, Meigs, and Morgan Counties later placed Pemberton's name on the ballot in their respective counties.

Hall continued his challenge against Pemberton's eligibility. He brought a suit in the Roane County Chancery Court for *quo warranto* and declaratory judgment, as well as an amended complaint adding a claim for writ of certiorari of the Commission's final

2

decision. The judge entered an order dismissing the case on July 21, primarily due to Hall's lack of standing as an "aggrieved person."

McFarland was the Commission's legal counsel. He cited a conflict of interest and recused himself from representing it at the April 28 hearing. He had been quoted in local papers saying Pemberton appeared to live in Knoxville and following the hearing, was quoted as saying the residency question was an issue for voters to decide. On occasion, McFarland used the residency dispute in his campaign by sharing messages on his campaign's social media page that included "Vote for Tom! He lives here!" and "We want a judge that lives here!" Ultimately, the voters decided in Pemberton's favor. He won the election with 54.7% of the vote in Roane County and 50.6% for the Ninth District overall. The Commission certified the election results on August 15, 2014. Subsequently, Pemberton was sworn in and began his term as circuit judge.

On August 20, 2014, McFarland filed an election challenge against Pemberton and the Commission under Tenn. Code Ann. § 2-17-101 (2014). He contested the election on the grounds that Pemberton failed to meet the residency requirement, should not have been allowed on the ballot, and is disqualified from holding the office of Ninth District Circuit Court Judge. McFarland argues the election results should be voided.

The trial court heard the matter on September 30, 2014. The court determined that the Commission's hearing constituted a quasi-judicial act, such that its voting on Pemberton's eligibility was a final determination. The trial court held the proper method for challenging such a determination was by writ of certiorari as required by Tenn. Code Ann. § 27-9-102, which allows sixty days from the time of the determination for an aggrieved party to bring a challenge. Hence, the trial court held that McFarland's claim was not timely filed. The court dismissed the case. He appeals.

II.

Generally, following an election a losing candidate may file an election challenge questioning the winning candidate's qualifications to be on the ballot. *Hatcher v. Bell*, 521 S.W.2d 799 (Tenn. 1974). In *Hatcher*, a losing candidate for circuit judge timely challenged whether the winning candidate met the residency requirement set forth in the state constitution. 521 S.W.2d 799, 800-01 (Tenn. 1974); Tenn. Const. art. VI, § 4. The Supreme Court heard the case as an election challenge and ultimately ruled in favor of the losing candidate. *Id.* at 802, 804. A key difference between the current case and *Hatcher* is that here the Commission held a public, pre-election hearing on whether Pemberton met the state constitution's residency requirement *before* certifying the ballot. As the trial court correctly points out, this case turns on whether that hearing was a ministerial or quasi-judicial act.

If the Commission's determination constitutes a quasi-judicial action, then it may be reviewed pursuant to Tenn. Code Ann. § 27-9-101 (Supp. 2015). Under this statute, "[a]nyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not specifically provided, in the manner provided by this chapter." Tenn. Code Ann. § 27-9-101. Significantly, that chapter imposes a statute of limitations that requires a party to file a petition of certiorari "within sixty (60) days from the entry of the order or judgment." Tenn. Code Ann. § 27-9-102. McFarland filed his claim more than sixty days after the April 28, 2014 decision of the Commission.

McFarland argues that the April 28 hearing was ministerial rather than quasi-judicial. He filed his suit as an election challenge pursuant to Tenn. Code Ann. § 2-17-101. That statute provides, in part, that "any candidate for the office may contest the outcome of an election for office." Tenn. Code Ann. § 2-17-101(b). An election challenge must be filed within five days after the election is certified. Tenn. Code Ann. § 2-17-105 (2014). McFarland's suit was timely filed as an election challenge.

McFarland raises two issues on appeal, which we recite here verbatim from his brief:

> Whether the hearing conducted by the election commission regarding the residency of the defendant/appellee, Mike Pemberton, was a ministerial act or a quasi-judicial action.

> If the hearing conducted by the Election Commission was a quasi-judicial act, then was the appellant an aggrieved party by the decision of the Election Commission.

(Numbering of paragraphs omitted.)

### III.

Pursuant to Tenn. R. App. P. 13(d), we review findings of fact by the trial court de novo upon the record of the trial court. The case comes to us with a presumption of correctness as to the court's findings, unless the preponderance of the evidence is otherwise. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We review the trial court's conclusions of law de novo with no presumption of correctness. *Id.*

### IV.

The test to determine whether a governmental act is quasi-judicial is whether it executes laws already in existence. *State ex rel. Moore & Assoc., Inc. v. West*, 246

S.W.3d 569, 575 (Tenn. Ct. App. 2005) (quoting *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990)). The execution of existing laws requires "applying the facts of the matter before the board to an ordinance or other legal rule." *Walker v. Metro. Bd. of Parks & Recreation*, No. M2007-01701-COA-R3-CV, 2009 WL 5178435, at *10 (Tenn. Ct. App. M.S., filed Dec. 30, 2009). For example, "[d]eciding whether a particular situation meets the requirements of a zoning ordinance is an administrative function." *Moore & Assoc., Inc.*, 246 S.W.3d at 576. Also, the "decision to issue or not to issue a building permit is an administrative decision, whether made by an official or by a board." *Id.*

Here, the April 28 hearing began with the Commission's administrator reading aloud the full text of Tenn. Code Ann. § 2-2-122 (2014), which sets out the principles for determining residency. The Commission's chairman requested this statute be read "so everybody understands what we're talking about here." From there, the hearing considered whether Pemberton met the state constitution's residency requirement by allowing both sides to present arguments and submit evidence, as well as answer questions from commissioners and hear related statements from the general public about the evidence and the applicable law. At the conclusion of the hearing, the Commission held a vote and unanimously decided that Pemberton met the requirement.

"[A]dministrative determinations, judicial or quasi-judicial in nature . . . are accompanied by a record of the evidence produced and the proceedings had in a particular case." *Fallin v. Knox Cnty. Bd. Of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983). Other provisions of Chapter 27 Title 9 "plainly presuppose that a judicial or quasi-judicial proceeding is the subject of review and that a 'record' of evidence, common in such proceedings, is available for certification to the reviewing court." *Fallin*, 656 S.W.2d at 341. In this case, the Commission invited a court reporter to attend and prepare a transcript of the meeting. The Commission incorporated the transcript into its official meeting minutes and later made it publicly available.

"The words of [Tenn. Code Ann. § 27-9-101] clearly limit judicial review of actions by administrative bodies to *final* orders or judgments." *Walker*, 2009 WL 5178435, at *9 (emphasis added). "[A]ctions by boards or commissions that are not final orders or judgments are not subject to judicial review under the common law writ of certiorari." *Id.* at *9. An action is "final" when it is a "decisive governmental act authorizing or taking any specific action." *Id.* at *10. "A number of federal cases and cases from other jurisdictions have held that a recommendation by an administrative body is not a final order because further executive or legislative action is required before any final action can be taken." *Id.* Here, the determination made was a final one. The Commission applied the facts to state law and then voted. Based on the results of that vote, the Commission certified the ballots later that same day without any other executive or legislative action or approval being required.

In summary, the April 28 hearing and vote by the Commission meets the characteristics of a quasi-judicial act. The Commission applied existing law to the facts at hand to reach a decision, created a record of the proceeding, and issued a determination that authorized the Commission to certify the ballots without requiring approval of the board's decision from another government body. For those reasons, we find the hearing was quasi-judicial. In his brief, McFarland argues "The 'hearing' was . . . in no way a quasi-judicial proceeding" because it

> included no semblance of due process including that there was no power or ability to conduct discovery, there was no subpoena power, no sworn testimony was taken, no cross examination of individuals was available, the parties were restricted to fifteen minutes of oral argument, and people who were not a party to the complaint were only allowed to speak for three (3) minutes.

McFarland is correct that the hearing lacked the full formality of a judicial proceeding, but that is not the standard for a quasi-judicial act to which Tenn. Code Ann. § 27-9-101 would apply.

We next must evaluate whether the Commission had the authority to hold a quasi-judicial hearing and issue a final determination as to whether a constitutional requirement was met. McFarland argues in his brief that the Commission "lacks the authority and power to resolve factual disputes regarding a candidate's eligibility to run for office or to weigh the credibility of evidence." The Supreme Court has made clear that the members of the Commission are "ministerial officers." *City of Memphis v. Shelby Cnty. Election Comm'n*, 146 S.W.3d 531, 535 (Tenn. 2004) (citing *Shelby Cnty. Election Comm'n v. Turner*, 755 S.W.2d 774, 776 (Tenn. 1988); *Peeler v. State ex. rel Beasley*, 231 S.W.2d 321, 323 (Tenn. 1950); *Curtis v. State*, 43 S.W.2d 391 (Tenn. 1931); *Taylor v. Carr*, 141 S.W. 745, 750 (Tenn. 1911)). A "ministerial officer" is "[o]ne who performs specified legal duties when the appropriate conditions have been met, but who does not exercise personal judgment or discretion in performing those duties." *City of Memphis*, 146 S.W.3d at 535 (quoting Black's Law Dictionary 1113 (7th ed. 1999)). The April 28 hearing required the Commission to weigh evidence regarding Pemberton's residency and make a determination as to whether he was disqualified, all of which would require the Commission to exercise discretion.

In *City of Memphis*, the Supreme Court spelled out a limitation on a county election commission's authority. There, the Court held that the Shelby County Election Commission and its members lacked authority to determine whether a referendum was constitutional such that it was qualified to be placed on the ballot. 146 S.W.3d at 535. The Court held:

6

it is inaccurate to say that the Commission has the power and duty to perform an initial or cursory review of the *substantive* constitutionality of measures to be placed on the ballot for referendum. Determining the substantive constitutionality of such measures is a function reserved for the judicial branch of government.

* * *

Any statute purporting to grant the Coordinator or the Commission such broad interpretative authority would run afoul of the principle of separation of powers embodied in the Tennessee Constitution, Article II, sections 1 and 2.

*Id.* at 536-37 (emphasis in original).

Still, it would be a mistake to suggest county election commissions only have the authority to perform ministerial functions. ***Peterson v. Dean***, No.3:09-628, 2013 WL 652525, at *8 (M.D. Tenn. Feb. 21, 2013), *aff'd* 777 F.3d 334 (6th Cir. 2015). Despite limitations on the discretion allowed for ministerial officers, the Supreme Court has held that a county election commission has the power and duty to make an "initial determination" of whether the law authorizes the acts it is required to perform as it pertains to its ministerial duties. ***City of Memphis***, 146 S.W.3d at 536. Previously, this Court has held that the above language from ***City of Memphis*** "supports a finding that the Election Commission was entitled to make a final determination" regarding issues surrounding a ballot "prior to judicial review" and that the language of Tenn. Code Ann. § 27-9-101 comports with this view. ***Littlefield v. Hamilton Cnty. Election Comm'n***, No. E2010-02410-COA-R3-CV, 2011 WL 5221744, at *7 (Tenn. Ct. App. E.S., filed Nov. 3, 2011). "Without question, the Commission and the Coordinator have certain statutorily prescribed ministerial duties that allow – indeed require – them to . . . determine whether candidates have properly qualified to be placed on the ballot." ***City of Memphis***, 146 S.W.3d at 535.

The Commission's ministerial duties are clear with regard to finalizing the list of candidates on an election ballot. State statutes direct county election commissions to include on ballots "only the names of candidates who have qualified." Tenn. Code Ann. § 2-5-202 (2014) (*See also* Tenn. Code Ann. § 2-5-204 (2014)). Further, the Coordinator of Elections is required to "[e]nsure that all election commissions within the state shall prohibit any person from becoming qualified to have such person's name placed on any ballot wherein such person is seeking to be nominated or elected to an office for which such person is ineligible . . ." Tenn. Code Ann. § 2-11-202(a)(12) (2014). It is implicit in executing these ministerial duties that the commission and election coordinator must

7

be able to determine whether a candidate is disqualified to run due to his residency or some other factor.

The Tennessee Attorney General's Office has described the residency requirement as the most straightforward means to achieve a compelling state interest, implying that its enforcement requires limited discretion compared to the alternatives.

> Residency requirements serve two compelling state interests. They [e]nsure that the candidate knows the area and that the area's voters know the candidate. . . . The fact that an individual who does not meet the residency requirement may know the area and may be known by the voters does not undermine the validity of the residency requirement. The residency requirement is an objective, easily applied standard. No viable alternative exists to advance the state's compelling interest. To create a subjective test of a candidate's knowledge of a district would necessarily be difficult to implement, place undue power in the hands of the persons applying the test and open the election process to frequent claims of arbitrary, unequal application.

Tenn. Op. Att'y Gen. No. 84-182 (June 19, 1984).

The State Attorney General's office has recognized a "duty" of election commissions to hold a hearing when a candidate's qualifications are properly questioned. "[W]hen 'reliable information' is presented to a county election commission that a candidate is disqualified for some reason . . . the commission has a duty to conduct a hearing on that issue to determine whether the candidate is or is not disqualified." Tenn. Op. Att'y Gen. No. 94-108 (Sept. 20, 1994) (*see also* Op. Tenn. Atty. Gen. 79-115 (June 15, 1979), at p. 2).

A trial court may not have jurisdiction to hear an issue otherwise reserved for a county election commission until the commission issues a final determination. In ***Littlefield***, which dealt with the recall effort of Chattanooga's mayor, this Court found "the Election Commission was entitled to make a final determination regarding the issues surrounding the recall ballot *prior to* judicial review." 2011 WL 5221744, at *7 (emphasis added). In that case, the Hamilton County Election Commission was set to determine whether to certify the recall ballot at a meeting on September 8, 2010. ***Id.*** at *1. Ahead of that meeting, the mayor filed a complaint for declaratory judgment and injunctive relief against the Election Commission. ***Id.*** at *1-2. "[T]he trial court rendered a ruling without allowing the Election Commission to formally decide whether or not to certify the recall petition" and as a result, "the trial court lacked jurisdiction." ***Id.*** at *8.

8

For the above reasons, we find that the Commission had the authority to hold the April 28 hearing and grant a final determination regarding Pemberton's qualifications. "An action for certiorari is the proper remedy for a party aggrieved by the final order or judgment of an administrative body which has acted in a judicial or a quasi-judicial capacity to apply existing law to the facts of a particular case." *Walker*, 2009 WL 5178435, at *8 (citing Tenn. Code Ann. § 27-9-101).

V.

We next turn to the question of whether McFarland was an "aggrieved party." McFarland argues that even if the Commission's vote was a quasi-judicial act, he was not the proper party to challenge it. He states in his brief that he "could not have appealed the decision of the Commission of the Willis Hall complaint as he was not even a party" to the action and was not aggrieved by the finding until after the conclusion of the election.

"[R]eview of a final order or judgment of any board of commission functioning under the laws of this state is limited to those 'aggrieved' by the decision." *Roberts v. State Bd. of Equalization*, 557 S.W.2d 502, 503 (Tenn. 1977). The legislature's decision to

> [extend] the authority to appeal and to seek judicial review to all persons who are "aggrieved" reflects an intention to ease the strict application of the customary standing principles. *Federal Election Comm'n v. Akins*, 524 U.S. at 19, 118 S.Ct. at 1783 (holding that "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly – beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested").

*City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 57 (Tenn. Ct. App. 2004). "For the purposes of Tenn. Code Ann. § 27-9-101, to be 'aggrieved,' a party must be able to show a special interest in the agency's final decision or that it is subject to a special injury not common to the public generally." *Wood v. Metro. Nashville & Davidson Cnty. Gov't*, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005) (citing *Buford v. State Bd. of Elections*, 206 Tenn. 480, 484, 334 S.W.2d 726, 728 (1960)). An "aggrieved party" under Tenn. Code Ann. § 27-9-101 no longer has to be a party to the original suit. In *Trosper v. Cheatham Cnty. Planning Comm'n*, we explained:

> *City of Brentwood* states that "[i]n addition to this statutory requirement [Tenn. Code Ann. § 27-9-101], persons seeking

9

> judicial review of a board of zoning appeals decision must have been parties to the proceeding before the board." *City of Brentwood*, 149 S.W.3d at 57 (citing *Levy v. B[d.] of Zoning App.*, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *5 (Tenn. Ct. App. [M.S., filed] Sept. 27, 2001). While *Levy,* citing Tenn. Code Ann. § 27-9-104, states that parties to an administrative proceeding continue to be parties to a review under a writ of certiorari, it does not stand for the proposition that to have standing to file a petition for review of a final decision of any board or commission a petitioner must have been a "party" to the hearing, meeting, or other proceeding during which the final decision was made. *See Levy*, 2001 WL 1141351, at *5.

No. M2009-01262-COA-R3-CV, 2010 WL 175094, at *5, n.2 (Tenn. Ct. App. M.S., filed Jan. 19, 2010).

McFarland was not a party to Hall's complaint, but this does not disqualify him from bringing a challenge to the Commission's decision under Tenn. Code Ann. § 27-9-101. McFarland and Pemberton were the sole candidates in the election for circuit judge. The Commission's decision regarding Pemberton's qualifications, in effect, would determine whether McFarland was the only candidate in the election and, thus, the default winner. Therefore, he had a "special interest in the agency's final decision." *Wood*, 196 S.W.3d at 158.

McFarland's election challenge involves a sole issue, identical to the one Hall brought, that was heard and decided by the Commission at the April 28 hearing. The substance of McFarland's current complaint, in essence, is a challenge to the Commission's quasi-judicial proceeding and final determination. "[W]here the action being challenged is . . . quasi-judicial in nature . . . the appropriate method for obtaining judicial review of that action is by common law writ of certiorari." *Moore & Assoc.*, 246 S.W.3d at 575. In *Anderson v. Metro. Dev. & Hous. Agency* we considered whether "the use of the permissive word 'may' in [Tenn. Code Ann. § 27-9-101], rather than a directive word like 'shall' or 'must,' implies there are other avenues of relief open to an aggrieved party." No. M2012-01789-COA-R3-CV, 2013 WL 3941079, at *4 (Tenn. Ct. App. M.S., filed July 26, 2013), *appeal denied* (Nov. 13, 2013). The court determined "the word 'may' in [Tenn. Code Ann. § 27-9-101] is permissive, but only because it indicates that an option for judicial review exists, which an aggrieved party may or may not choose to take advantage of." *Id.* Tenn. Code Ann. § 27-9-102, which imposes the 60-day statute of limitations, "sets out the jurisdictional parameters of the court's power to adjudicate claims brought by parties aggrieved by the orders or judgments of public bodies." *Id.* at *5.

Finally, "[c]hallenges to a candidates' right to appear on a ballot should ordinarily be brought before the election." *Barrett v. Giles Cnty.*, No. M2010-02018-COA-R3-CV, 2011 WL 4600431, at *4 (Tenn. Ct. App. M.S., filed Oct. 5, 2011). Doing otherwise "prejudices" the candidate whose qualifications are brought into question, as well as that candidate's financial supporters and those who voted for him. *Id.* It is undisputed that McFarland had knowledge of Hall's complaint and the Commission's decision to keep Pemberton on the ballot. He was quoted in local newspapers as making comments concerning the hearing, Pemberton's residency, and the Commission's final determination. He also recused himself from representing the Commission at the hearing due to his obvious conflict of interest. Still, he waited to challenge Pemberton's qualifications until after the election, stating then that "Pemberton's election must be declared void." But "voiding an election is an extreme remedy." *King v. Sevier Cnty. Election Comm'n*, 282 S.W.3d 37, 43 (Tenn. Ct. App. 2008). "[C]ourts should be . . . reluctant to take the step of declaring an election invalid." *Id.* (quoting *Forbes v. Bell,* 816 S.W.2d 716 (Tenn. 1991)). In *Barrett* the court also took into account the cost of holding another election when explaining the court's reluctance to void an election. 2011 WL 4600431, at *4. Here, holding another election for circuit judge "would cost Roane County approximately $60,000.00 to $75,000.00 and the four counties in the Ninth (9th) Judicial District approximately $150,000.00 to $200,000.00," according to an affidavit submitted by the Roane County Administrator of Elections.

In summary, we affirm the trial court's finding that the Commission entered a final determination regarding Pemberton's residence at the April 28 hearing. We further agree that McFarland was an aggrieved party to the Commission's determination. For these reasons, writ of certiorari as provided in Tenn. Code Ann. § 27-9-101 was the proper method to challenge the Commission's decision. As a result, McFarland's claim is time-barred pursuant to Tenn. Code Ann. § 27-9-102.

VI.

The judgment of trial court that the complaint in this case is time-barred is affirmed. Costs on appeal are assessed to the appellant, William Thomas McFarland. The case is remanded for the collection of costs assessed in the trial court.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

11